SOPHIA STONE, administratrix, *vs.* WILLIAM SULLIVAN.

SAME *vs.* SAME.

SAME *vs.* SAME.

Middlesex.    November 12, 1936. — June 3, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Landlord and Tenant*, Eviction, Repairs, Construction of lease.

Covenants in a lease of a building, one by the lessee to pay rent and the other reading, "Outside repairs . . . to be made by lessor — ten days written notice of any leak in roof to be given by lessee to lessor," were

independent in the absence of a clear indication to the contrary; and the lessee had no right to refuse to pay rent because of the lessor's failure to repair unless such failure at least amounted to a constructive eviction.

An essential element of a constructive eviction of a lessee by a lessor of real estate is that abandonment of possession by the lessee follow within a reasonable time the conduct of the lessor of which he complained.

A finding of constructive eviction of a lessee of a building by the lessor by reason of a breach by the lessor of a covenant to make repairs on notice was not warranted where it appeared that the lessee continued in occupation without paying rent for nearly a year after such breach.

THREE ACTIONS OF CONTRACT.    Writs in the First District Court of Eastern Middlesex dated December 20, 1928, May 2, 1929, and October 16, 1935.

The defendant appealed from a reversal by the Appellate Division for the Northern District of findings by *Davis*, J.

*J. F. Maher*, for the defendant, submitted a brief.

*G. S. Alberts*, for the plaintiff.

FIELD, J.    These are three actions of contract brought in a district court by Ephraim Stone, and now prosecuted by the administratrix of his estate, to recover rent under a written lease.    A lease was introduced in evidence.    It was dated October 7, 1926, named Ephraim Stone as lessor and William Sullivan, "doing business under the style and name of The Flower Shoppe," as lessee, and was signed by both Ephraim Stone and William Sullivan.    This lease recited "That in consideration of the rent and covenants herein reserved and contained on the part of the Lessee to be paid, performed and observed, the Lessor do hereby demise and lease unto the Lessee the stores numbered 299–301 Pleasant St., Malden with basements there under.    To conduct a florist business."    "To Have and to Hold the premises hereby demised unto the Lessee" for a term of three years from November 1, 1926, reserving an annual rent payable in advance in monthly payments of $110 each during the first year of the term and $115 each during the other two years.

The first case is brought to recover rent for the months of October, November and December, 1928, the second case, rent for five months, beginning January, 1929, and the

third case, rent for five months, beginning June, 1929. The answer in each case was general denial and payment and, also, in the third case — commenced by writ dated October 16, 1935 — the statute of limitations. In each case four requests by the plaintiff for rulings were denied and one such request was granted, and in the third case two additional requests based on the statute of limitations were granted. The trial judge made no special findings. In the first case there was a finding for the plaintiff in the sum of $156.20 — which included interest — and in each of the other cases a finding for the defendant. The plaintiff obtained a consolidated report of the three cases to the Appellate Division which, in each case, ordered the finding vacated and judgment entered for the plaintiff in the full amount of the rent sought to be recovered therein with interest from the date of the writ. The defendant appealed to this court. We interpret the words in the record, "The evidence was substantially as follows," introducing the recital of evidence — particularly in view of the concessions of the parties and of the absence of any argument to the contrary — as meaning that the report contains the substance of all the evidence material to the questions of law reported. See *Crowninshield* v. *Broughton,* 239 Mass. 17, 18; *Cohen* v. *Longarini,* 207 Mass. 556, 557; *Swistak* v. *Paradis,* 288 Mass. 377, 380.

It is undisputed that the defendant occupied the premises under the lease until about October 30, 1928, and paid the rent called for by the lease up to and including the month of September, 1928. The defendant now makes no contention that he is not liable for the rent for October, 1928. He contends, however, that he is not liable for rent thereafter. No question relating to the statute of limitations is brought before us by the report. The plaintiff is entitled as matter of law to recover the rent reserved under the lease — which was in evidence — unless by reason of some affirmative defence the defendant was relieved from liability therefor. *Gaston* v. *Gordon,* 208 Mass. 265, 270. *Fifty Associates* v. *Berger Dry Goods Co. Inc.* 275 Mass. 509, 511. *Tracy* v. *Long,* 295 Mass. 201, 203. The only affirmative defence upon which the defendant relies is that by reason of the

failure or refusal of the lessor to make repairs, the defendant was entitled to quit the premises and to refuse to pay the rent on the ground that such failure or refusal of the lessor to make repairs constituted a constructive eviction. This defence is not established by the evidence.

The lease provided that the lessee covenanted with the lessor that the lessee "will pay unto the Lessor the said rent at the times, and in the manner aforesaid (except as hereinafter provided), and will keep all and singular the said premises in such repair, order and condition as the same are in at the commencement of said term, or may be put in during the continuance thereof, damage by fire or other unavoidable casualty only excepted (Outside repairs, however to be made by lessor — ten days written notice of any leak in roof to be given by lessee to lessor. . . . and will peaceably yield up to the Lessor the said premises, and all erections and additions made to or upon the same, in good repair, order and condition in all respects, damage by fire or other unavoidable casualty excepted . . . and no addition or alteration to or upon the said premises shall be made without the consent in writing of the Lessor; and the Lessor or his agents may during the said term . . . enter to view the said premises [and for other purposes] and . . . make repairs and alterations if he should elect so to do."

The following evidence is reported: "In November, 1927, water would leak through the top of the front windows and seep through the ceiling of the demised premises wetting a strip running along the front of said ceiling and at times causing bits of calcimine to fall on plants thereunder. On or about November 7, 1927, the following letter was sent to the lessor: — 'Nov. 7, 1927  Mr. E. Stone 53 State St. Boston, Mass.  Dear Sir: According to the terms of our lease for the premises located at 299 Pleasant Street, Malden, we hereby give you notice that the roof over the window in the front of this store is leaking and we ask you to make the necessary repairs.  Awaiting your action on this matter, we are  Very truly yours, (Signed)  The Flower Shoppe WAS/CMC'  The lessor sent out two repair men who made repairs on the same.  About two months thereafter

a large spot on the ceiling over the window in front of the store became wet and bits of calcimine dropped therefrom. The defendant from time to time spoke to the lessor of said condition and orally requested that the same be repaired. On October 3, 1928, the following letter was sent to the lessor by the defendant's attorney: — 'Oct. 3, 1928   Mr. E. Stone 53 State St. Boston, Mass.   Dear Sir: Please take notice that Mr. William Sullivan lessee of property described in letter from you as 299–301 Pleasant Street hereby gives notice that he will quit said premises on the last day of this month and that the lease is hereby cancelled.   The reason for cancelling said lease is because you have failed to live up to your agreement of repair although having notice in writing and verbally on several occasions.   Yours truly, MF/BK'   The lessor sent out roofers, but no repairs were made.   On or about October 30, 1928, the defendant moved out."   A roofer, called as a witness by the defendant, "the only witness that had actually been on the roof, testified that the wet spots on the ceiling were due to the base flashing around the roof being too small to hold the rain."

The lease purports to demise to the lessee the entire premises described therein without reservation of control over any part of such premises.   The reservation of a right in the lessor to enter upon the premises for various purposes and to "make repairs and alterations if he should elect so to do," imports no such reservation of control.   *Boston* v. *Gray,* 144 Mass. 53, 56.   *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47, 48.   And there is no other basis in the record for a finding that control was reserved by the lessor.   In the absence of express agreement by a lessor to make repairs on leased premises not in his control, a failure to do so does not give the lessee the right to quit or to refuse to pay the rent, even though for lack of repair the leased premises became uninhabitable or unfit for the use for which they were leased.   *Kramer* v. *Cook,* 7 Gray, 550, 553.   *Royce* v. *Guggenheim,* 106 Mass. 201, 202.   *Roberts* v. *Lynn Ice Co.* 187 Mass. 402.   *Ware* v. *Hobbs,* 222 Mass. 327, 328.   Such refusal or neglect to repair, not being an "intentional and

wrongful act," would not amount to a constructive eviction. See *Hopkins* v. *Murphy*, 233 Mass. 476, 477.

The defendant, therefore, must rely on the provision in the lease, incorporated in the lessee's covenant to repair, "Outside repairs, however to be made by lessor — ten days written notice of any leak in roof to be given by lessee to lessor." However, the lessee's covenant to pay rent and the lessor's covenant or agreement to make "outside repairs," in the absence, as here, of a clear indication to the contrary, were independent. *Leavitt* v. *Fletcher*, 10 Allen, 119, 121. *Taylor* v. *Finnigan*, 189 Mass. 568, 575. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 426–427. *Barry* v. *Frankini*, 287 Mass. 196, 210. The lessee had no right to refuse to pay the rent unless there was a breach by the lessor of this agreement and no such right, even if there was such a breach, unless, at least, the breach amounted to a constructive eviction. A constructive eviction has been defined as "some act of a permanent character, done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises or some part of it, to which he yields, abandoning the possession within a reasonable time." *Bartlett* v. *Farrington*, 120 Mass. 284. See also *Tracy* v. *Long*, 295 Mass. 201, 203. Whether a breach of the lessor's covenant or agreement to repair resulting in the premises becoming uninhabitable or unfit for the purposes for which they were leased would have entitled the lessee to quit and refuse to pay the rent on the ground of a constructive eviction need not be decided (see *Royce* v. *Guggenheim*, 106 Mass. 201, 202–203; *Taylor* v. *Finnigan*, 189 Mass. 568, 573; *Goldberg* v. *Horan*, 263 Mass. 302, 304; *Shindler* v. *Milden*, 282 Mass. 32, 34–35), nor need it be decided whether a finding of such a breach or of such a result was warranted by the evidence, for the evidence fails to show an essential element of a constructive eviction, that the lessee abandoned the premises within a reasonable time. See *Callahan* v. *Goldman*, 216 Mass. 238.

There was no evidence of any necessity for outside repairs other than repair of a leak in the roof and there was no

evidence of any such leak of which ten days' written notice was given — as required by the covenant or agreement — prior to November, 1927, during the second year of the term. There was evidence that the roof leaked at that time and that ten days' written notice of such leak was given by the lessee to the lessor on November 7, 1927, and there was evidence that the lessor made repairs. But even if this evidence was not binding on the defendant — a matter which cannot be determined from the report — there was no evidence that the repairs were not made unless an inference to that effect could be drawn from the evidence that the roof leaked two months later. There was, however, no evidence of written notice given within ten days after the second time the roof leaked. The evidence of oral notice is not sufficient. And the letter of October 3, 1928, does not purport to be notice of a leak. Nor was it given within ten days after any leak shown by the evidence occurred. The defendant, therefore, must rely solely upon the leak occurring in November, 1927. But in the aspect of the evidence most favorable to the defendant the breach of the lessor's covenant or agreement to repair, if any, occurred when the lessor failed within a reasonable time after November 7, 1927, to repair the leak. Yet, on the evidence, the lessee did not abandon possession of the premises until October 30 of the following year. Such abandonment could not have been found to be within a reasonable time after the breach, if any, of the lessor's covenant or agreement to make outside repairs. *Palumbo* v. *Olympia Theatres, Inc.* 276 Mass. 84, 88–89. See also *Callahan* v. *Goldman,* 216 Mass. 238.

It follows, therefore, that it was error in each case to deny the plaintiff's request for ruling numbered five: "Upon all the evidence the court cannot find that there was an eviction in the case at bar, because there was no act of a permanent character done by the Lessor or by his procurement with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or a part thereof, to which he yielded and abandoned possession." Such error vitiated the general findings of the trial judge.

Since a correct disposition of this request would have been decisive of the cases and required, in each of them, a finding for the plaintiff in the amount sought thereby to be recovered, it is not necessary to pass specifically upon the other requests for rulings. And the appellate division, in each case, rightly ordered the finding vacated and entry of judgment for the plaintiff. G. L. (Ter. Ed.) c. 231, §§ 110, 124. *Andrade* v. *Hanley*, 289 Mass. 335, 337. In each case the order of the Appellate Division is affirmed.

*So ordered.*