**WALKER & DUNLOP, Inc., v.
GLADDEN et al.**

No. 359.

Municipal Court of Appeals for the
District of Columbia.

June 5, 1946.

Rehearing Denied June 19, 1946.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Arthur L. Willcher, of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

HOOD, Associate Judge.

Plaintiffs below, husband and wife, sued their landlord for damages arising from personal injuries allegedly suffered by the wife when she received a shock from an electric light switch in their apartment.

Plaintiffs' evidence tended to show that they had occupied the apartment since April 1941; that around Thanksgiving of 1943 they reported "something" respecting the electric system in the apartment to the landlord; that late in December or early January the landlord sent out a man who did something to the light switch in the bathroom; that after that "sparks flew from the switch"; that on May 9 they reported to the landlord that the light switches were bad, especially in the bathroom; that sometimes the lights would not come on, and "they would flick and flick and sparks flew terribly"; that the landlord sent no one to make repairs, and on May 12 the wife answered the telephone, which is located in the hall, and as she picked up the receiver she "leaned against the light switch," and the next thing she recalled she was lying in the hallway "crying and shaking all over and my foot was bleeding."

The evidence that the hall switch was defective, that the wife received a shock from it, or indeed that she received a shock at all, and that the injuries complained of resulted from a shock, was scant. However, we cannot say that the evidence did not warrant submitting these questions to the jury. But, assuming a shock from a defective switch, the question of the landlord's liability remains for consideration.

The court charged the jury that if the landlord undertook to make any repairs to the electrical system, it was the landlord's duty to make them properly; and if, after the repairs were made, the electrical system was still in a dangerous condition, then the defendant's failure to make the repairs was negligence. We think that this instruction submitted the case to the jury upon an erroneous theory in the light of the testimony in the case. It is, of course, well established that if a landlord undertakes to repair, whether obligated to do so or not, it is his duty to make the repairs properly and he is liable for any neglect in making them. Miller v. Fisher, 111 Md. 91, 73 A. 891, 50 L.R.A.,N.S. 295; Marks v. Nambil Realty Co., Inc., 245 N.Y.

256, 157 N.E. 129. However, in the present case, there was no evidence that the landlord ever undertook to make repairs to the switch from which the alleged shock was received. The landlord had undertaken to repair the bathroom switch, but there is no evidence, expert or otherwise, that neglect in making those repairs, if there was neglect, had or could have had any effect upon the hall switch from which the alleged shock was received. There was no testimony that when the man came and repaired the bathroom switch his attention was called to the hall switch or that he was asked to inspect it or repair it. Therefore, we think the principle of law given to the jury by the trial judge had no application to the facts of the case and the giving of it was erroneous.

■ It is well settled that generally there is no obligation on the part of the landlord to make ordinary repairs. Paratino v. Gildenhorn, 55 App.D.C. 271, 4 F.2d 938. And the lease in this case did not impose upon the landlord the duty of making repairs. It contained a provision that the tenant should keep the premises in good order and condition, and surrender them in the same order in which received, usual wear and tear excepted. The tenant argues that two other provisions should be construed as requiring the landlord to make repairs. Those provisions are that the tenant will allow the landlord access to the premises for the purpose of inspection or for making any repairs the "landlord considers necessary or desirable," and that the tenant will give the landlord prompt notice of any defects in the structure and equipment or fixtures. We do not think these provisions can be construed to impose a duty on the landlord to make repairs. We think a landlord may reserve the right to make such repairs as he thinks necessary or proper for the protection of his property, or even for the comfort and convenience of his tenants, without imposing upon himself the duty to make them. Gulliver v. Fowler, 64 Conn. 556, 30 A. 852; Stone v. Sullivan, 300 Mass. 450, 15 N.E.2d 476, 116 A.L.R. 1223.

■ It is also insisted by the plaintiffs that because the evidence showed that in the past the landlord had made numerous repairs to various apartments in the building that by this course of conduct the landlord had assumed the duty and obligation to make repairs. We think this contention cannot be sustained. If such were the law, then all landlords would hesitate to make any repairs for fear that by so doing they would obligate themselves to make all repairs. Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369, and cases cited in annotation following at page 1382.

■ The landlord's liability in this case, if there be liability, must arise from the fact that the leased premises constituted a unit in an apartment house. The landlord of an apartment house who leases portions of it to various tenants and retains under his control other portions for the common use of all tenants stands in a situation different from the landlord whose tenant has possession and control of the entire building. The liability of the landlord of an apartment house for defective conditions within the building or on its grounds has been the subject of discussion in many cases in this District; and it is now well established that such a landlord has the duty of using reasonable care to keep the portions of the building retained under his control in a safe condition. Kay v. Cain, App.D.C., 154 F.2d 305, decided March 11, 1946; Hariston v. Washington Housing Corporation, D.C.Mun.App., 45 A.2d 287, and cases there cited. The rule applies to a central heating or water system controlled by the landlord. Iowa Apartment House Co. v. Herschel, 36 App.D.C. 457, Ann.Cas.1912C, 206; O'Hanlon v. Grubb, 38 App.D.C. 251, 37 L.R.A.,N.S., 1213; Wardman v. Hanlon, 52 App.D.C. 14, 280 F. 988, 26 A.L.R. 1249.

There is no difficulty in applying the rule when the defect occurs in a portion of the building used in common by the tenants and over which the landlord retains control. But the defect complained of here was not in a portion of the building under the landlord's control; it was within the tenant's apartment. Plaintiffs alleged, and argued here, that the electric system was under the control of the landlord and that

he was liable for any defects in it. For this proposition plaintiffs rely on the Iowa Apartment House and O'Hanlon cases, supra. In each of those cases the landlord was held liable for defective radiators in the tenant's apartment. Those cases laid down the rule that when an apartment house has a central heating plant, controlled and operated by the landlord, his duty of care extends to the entire heating system, including such portions as are in the respective tenants' apartments. By analogy, plaintiffs argue that the electric system of an apartment house is under the control of the landlord and his duty extends to the entire system including electrical fixtures within the individual apartments.

As we read the decisions, the landlord's liability does not depend primarily upon the portion of the building in which the defect occurs, but on the control retained by the landlord. Wardman v. Hanlon, supra; Fogarty v. M. J. Beuchler & Son, Inc., 124 Conn. 325, 199 A. 550. If the landlord retains control, he assumes the duty of maintenance; but such control must be exclusive. Thus, in the Iowa Apartment House case, it was said that the entire heating system was "under the exclusive care and control" of the landlord; in the O'Hanlon case the system was referred to as an "instrumentality under the exclusive control" of the landlord; and in the Wardman case the court spoke of the landlord's "exclusive control of the supply of water." [52 App.D.C. 14, 280 F. 991.] In Altemus v. Talmadge, 61 App.D.C. 148, 58 F.2d 874, 877, certiorari denied 287 U.S. 614, 53 S.Ct. 16, 77 L.Ed. 533, referring to a tenant's responsibility for injuries to third persons, the court said that "the principle of implied responsibility on the part of the tenant grows out of exclusive possession." Cf. Ripple v. Mahoning Nat. Bank, 143 Ohio St. 614, 56 N.E.2d 289.

Whether a portion of a building or an instrumentality in it is within the landlord's exclusive control is a matter of fact. In the instant case, the evidence did not conclusively establish that the light switches within the tenant's apartment were under the exclusive control of the landlord. There was evidence that the

Potomac Electric Power Company supplies electricity for the building and that that company's maintenance ends where the main line enters the building, at which point there is a main line switch; that the electric wiring is a part of the building; that the plaintiffs had a separate meter and paid their own electric bills; that this meter is owned and maintained by the Potomac Electric Power Company. Certainly the landlord does not operate and control the electric system in the same manner or degree that the landlords controlled and operated the heating systems in the Iowa Apartment House and O'Hanlon cases. In those cases the court apparently held as a matter of law that, since the central heating system was admittedly under the landlord's control, such control extended to the whole system; but we cannot from the evidence in this case hold that the electric light switch in the tenant's apartment, as a matter of law, was under the exclusive control of the landlord. This was a question of fact which ought to have been submitted to the jury, but the judge's charge failed to include it. The jury should have been instructed that before they could find defendant liable for the defect, they would have first to find that the landlord had exclusive control over the instrumentality in which the defect existed.

There was another vital omission in the charge to the jury. If the landlord was liable for defects occurring within the tenant's private premises its liability arose only from a failure to exercise reasonable care; a landlord is not an insurer of the safety of even the portions of the building under his control. We think reasonable care in such cases requires that he repair defects only after notice of such defects and that he make the repairs within a reasonable time after notice. C. W. Simpson Co., Inc., v. Langley, 76 U.S.App. D.C. 365, 131 F.2d 869; Asheim v. Fahey, 170 Or. 330. 133 P.2d 246, 145 A.L.R. 861. Plaintiffs' testimony was that notice of the defect had been given three days prior to the occurrence. Defendant denied that any notice was received and offered its office records in support of this contention. Yet the charge to the jury made no reference

to notice or to the necessity of the jury deciding this strongly disputed question of fact.

The landlord insists that he cannot be held liable for the reason that the lease contained an agreement that the landlord would be under no liability to the tenant from any accident or damage caused by the handling of electric wires or lights. If such provision attempts to exonerate the landlord from liability for his own negligence, it may be contrary to public policy. Kay v. Cain, supra. However, that is not for us to decide here because the injury complained of did not result from handling electric wires or lights but from something entirely different, an electric light switch.

For the reasons stated the judgment must be reversed and a new trial awarded.

Reversed with instructions to award a new trial.