Telisa SETTLES, Appellant,

v.

REDSTONE DEVELOPMENT
CORPORATION, Appellee.

No. 00–CV–1677.

District of Columbia Court of Appeals.

Argued Jan. 31, 2002.
Decided April 25, 2002.

MaryRose Ozee Nwadike, Silver Spring, MD, for appellant.

Robert B. Wallace, Washington, DC, for appellee.

Before SCHWELB, FARRELL, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Telisa Settles, an employee of Payless Shoe Store (Payless), brought this action against Redstone Development Corporation (Redstone), Payless' landlord, alleging that Redstone was liable to her for personal injuries suffered when a ceiling tile fell on her at the Payless store. The trial court granted Redstone's motion for summary judgment, concluding that Redstone owed Ms. Settles no legal duty. Ms. Settles appeals; we affirm.

### I.

The accident which gave rise to this action occurred on July 28, 1996. The wet piece of ceiling tile that struck Ms. Settles caused injuries to her head, left arm, and knee. The parties agree that the ceiling tile fell because it was heavily soaked with water, and that the source of the water was a malfunctioning air conditioning unit located above the ceiling tiles. Ms. Settles' theory in the trial court and on appeal is that Redstone knew or should have known of the potential danger from the air conditioning unit, that Redstone did nothing about that danger, and that Redstone was negligent and proximately caused Ms. Settles' injuries. Redstone's position throughout this litigation has been that the responsibility to maintain and repair the air conditioning unit was assigned solely to Payless by the terms of the lease and by controlling legal authority, and that Redstone therefore owed no duty of care to Ms. Settles. In a written order in which he summarized applicable law, the trial judge agreed with Redstone's contentions and granted summary judgment in Redstone's favor upon the ground that Redstone owed Ms. Settles no duty.

### II.

On January 11, 1985, Redstone and Payless entered into a Lease Agreement which was in effect (with amendments and extensions not here relevant) when the accident happened. Under the terms of the lease, it was the tenant's responsibility to carry out a program of regular maintenance and repair of the leased premises. With respect to air conditioning, Section 7.06 of the lease provided as follows:

> Prior to first opening for business, Tenant shall obtain, and thereafter maintain throughout the Main Term, a so-called full-service contract for the regular maintenance, servicing, and repairs of the heating, ventilating and air conditioning equipment serving the Demised Premises with a reputable air conditioning contractor acceptable to Landlord and shall furnish copies of such contract to Landlord. Landlord shall have the right and option, at any time(s) during the Lease Term upon not less than thirty (30) days prior notice to Tenant, to

take over the regular maintenance, servicing, and repair of the heating, ventilating and air conditioning equipment serving the Demised Premises and Tenant shall thereafter, monthly in advance, pay to Landlord an amount equal to what Tenant, on a competitive basis, would have otherwise paid a third party for a full-service contract.

Under Section 7.07 of the lease, the landlord also retained the right to make repairs at the tenant's expense if the tenant failed to do so:

If Tenant shall fail to make any such repairs or replacements or to perform any such maintenance as it is obligated to do under Section 7.06 within fifteen (15) days after written notice from Landlord ... Landlord may make or perform the same for the account of Tenant, without liability to Tenant for any loss or damage that may accrue to Tenant's merchandise, fixtures, or other property or to Tenant's business by reason thereof ... Nothing herein contained shall imply any duty on the part of the Landlord to perform any such work which under any provision of this Lease Tenant may be required to do, nor shall it constitute a waiver of Tenant's default in failing to do the same.

So far as the record reveals, Payless never obtained or maintained the full-service contract for maintenance of the air conditioning unit required by Section 7.06 of the lease. There is likewise no evidence that Redstone approved a contractor selected by Payless, as provided in the lease. On June 29, 1993, Redstone's property manager wrote a letter to Payless in which she reminded Payless "that it is your responsibility, as a Tenant, to maintain your Heating, Ventilating and Air Conditioning

Unit (HVAC)." The property manager further wrote that by adopting a good maintenance program,

you will be preventing major overhaul work on neglected general repairs. Every HVAC system should be checked at least four (4) times a year to guarantee proper furnace efficiency, fan operation, cleanliness of filters, and to stop air conditioning coil(s) from clogging. Preventative [sic] maintenance is often the best way to help stop problems before they start.

The letter concluded with a request that Payless "forward to us a copy of your service agreement for our records." There is nothing in the record to suggest that Payless complied with this request, or that Redstone took any action against Payless to enforce the terms of the lease.[1]

### III.

■ To paraphrase *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc):

In order to be entitled to summary judgment, [Redstone] must demonstrate that there is no genuine issue of material fact and that [it is] entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c): *Clyburn v. 1411 K Street Limited Partnership*, 628 A.2d 1015, 1017 (D.C.1993). The record is viewed in the light most favorable to the party opposing the motion. *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C.1991). On appeal, we must assess the record independently, but the substantive standard applied is the same as that utilized by the trial court. *Northbrook Ins. Co. v. United Servs. Auto Ass'n*, 626 A.2d 915, 917 (D.C. 1993).

---

1. A similar letter was sent by Redstone to Payless on January 20, 1999, two and a half years after the accident. According to this letter, Redstone at that time still had not been provided with a Preventive Maintenance Agreement for Payless' HVAC unit.

"The question ... whether a defendant owes a duty to the plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court." *Croce v. Hall,* 657 A.2d 307, 310 (D.C.1995) (citations omitted). "[W]hether summary judgment was properly granted is also [a question] of law, and we review *de novo* a decision granting such relief." *Abdullah v. Roach,* 668 A.2d 801, 804 (D.C.1995). In this case, the dispositive facts, which we have set forth in Part I of this opinion, are undisputed, and we must decide *de novo* whether Redstone was entitled to judgment as a matter of law.

■ The critical question in this case is whether Redstone owed a duty to Ms. Settles. As we explained in *Karl W. Corby Co. v. Zimmer,* 99 A.2d 485, 486 (D.C. 1953),

> [b]efore a party can prevail in an action such as this, he must first show a duty on the part of the landlord (or his agent) to make the repairs in question. This duty must arise either from a contract or from an obligation in tort, as it is well settled that generally there is no obligation on a landlord to make ordinary repairs.

At common law, the landlord of leased premises was not required to make repairs; that obligation shifted to the tenant with the transfer of possession:

> It is settled law that where the owner of premises, by lease, parts with the entire possession and control of the premises, and the tenant, either by express provision of the lease or by the silence of the lease on that subject, assumes liability for the keeping of the premises in proper repair, the tenant, and not the owner, will be liable in cases of an accident due

to negligence in allowing the premises, or any portion thereof, to get out of repair.

*Bowles v. Mahoney,* 91 U.S.App. D.C. 155, 159, 202 F.2d 320, 323–24 (1952), *cert. denied,* 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719 (1953) (quoting *Sec. Sav. & Commercial Bank v. Sullivan,* 49 App. D.C. 119, 120, 261 F. 461, 462 (1919)); *see also McKey v. Fairbairn,* 120 U.S.App. D.C. 250, 252–53, 345 F.2d 739, 741–42 (1965). The rule against holding a landlord liable for repairs, or for any damages resulting from a failure to make repairs,

> was based on the theory that the tenant was the "owner" of the premises for the term of his tenancy, and being in control of the premises as a whole, was responsible for its maintenance and upkeep.

*Karl W. Corby Co., supra,* 99 A.2d at 486.

■ "Modern ideas of social policy have given rise to a number of exceptions to these general rules of nonliability of the lessor, which to a large extent swallow up the general no duty rule." W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 63, at 435 (1984 & Supp.1988).[2] For example, the landlord is deemed responsible for those areas used in common by all of the tenants, for these areas remain under the control of the landlord. *See Kay v. Cain,* 81 U.S.App. D.C. 24, 25, 154 F.2d 305, 306 (1946). With respect to areas that have been leased to the tenant, the applicable law has been summarized as follows:

> When an injury occurs on a portion of the premises or because of an instrumentality exclusively under the control of the tenant, the landlord is not liable since he exercises no measure of control over the area or the instrumentality. If,

---

**2.** These exceptions are discussed in some detail in GLEN WEISSENBERGER & BARBARA B. MCFARLAND, THE LAW OF PREMISES LIABILITY §§ 9.6 *et seq.,* at pp. 240 *et seq.* (3d ed. 2001 & Supp.1995–99), and we address only those that are relevant here.

however, the tenant does not have exclusive control over the area, the question arises as to whether the landlord retained sufficient control to create a duty on his part to exercise due care in maintaining the area.

THE LAW OF PREMISES LIABILITY, *supra* note 2, § 9.12, at 254 (footnote omitted). A landlord has retained sufficient control to create a duty to repair if he has "the power or authority to manage, superintend, direct or oversee." *Panaroni v. Johnson,* 158 Conn. 92, 256 A.2d 246, 251 (1969).

◼ In the present case, Ms. Settles argues that Redstone has retained significant control over the premises leased to Payless in several respects. First, in Sections 7.06 and 7.07 of the lease, Redstone has the right to take over the regular maintenance, and service of the air conditioning equipment, and to make any necessary repairs. Second, the lease requires the tenant to select an air conditioning contractor "acceptable to Landlord." Third, according to Ms. Settles, the landlord has effectively acknowledged its responsibility by writing to the tenant and emphasizing the tenant's obligation under the lease.

◼ These contentions have a certain common-sense appeal,[3] but they cannot be reconciled with our precedents. As we stated in *Karl W. Corby Co., supra,* 99 A.2d at 486,

> The reservation by the landlord of the right to make repairs in the tenant's apartment, for the protection of his

property, and for the convenience and comfort of the tenant, cannot be used to place such a duty on the landlord, nor can such an obligation be placed on the landlord because he has voluntarily made repairs to the premises in the past.

(Footnote omitted.) *See also Lennon v. U.S. Theatre Corp.,* 287 U.S.App. D.C. 202, 207, 920 F.2d 996, 1001 (1990) ("clauses assuring a right and opportunity to make repairs do not create a duty to make them"); *Walker & Dunlop, Inc. v. Gladden,* 47 A.2d 510, 512 (D.C.1946) ("We think a landlord may reserve the right to make such repairs as he thinks necessary or proper for the protection of his property, or even for the comfort or convenience of his tenants, without imposing upon himself the duty to make them."). Moreover, Section 7.07 of the lease explicitly states, consistently with the quoted authorities, that

> [n]othing herein contained shall imply any duty on the part of the Landlord to perform any such work which under any provision of this Lease Tenant may be required to do, nor shall it constitute a waiver of Tenant's default in failing to do the same.

If the landlord's explicit reservation of the authority to enter the premises and to make repairs is insufficient to constitute retention of control, and if the landlord's making of prior repairs is also insufficient, *Karl W. Corby Co., supra,*[4] then the landlord's right to approve the air conditioning contractor and his correspondence with the tenant are surely likewise insufficient.

---

**3.** It is fair to say that after the landlord wrote to the tenant to advise the tenant of its obligations and requesting the tenant to forward a copy of its maintenance contract, and after the landlord received no satisfactory response, the landlord was on notice that the tenant might be in violation and that the air conditioning may not be being properly main-

tained. The landlord did nothing to avert the danger.

**4.** In *Karl W. Corby Co.,* the landlord's agent had promised to make repairs, but the court held that the promise was unenforceable for lack of consideration. 99 A.2d at 487. According to the court,

Ms. Settles contends that she is not the tenant, that she never had occasion to agree to the terms of the lease, and that the assignment to the tenant, in that instrument, of the duty to make repairs should not be binding on her or absolve the landlord from the duty to make repairs under the circumstances of this case. In *Bowles v. Mahoney, supra,* however, the court explicitly stated the rule to be that "the duties and liabilities of a landlord to persons on the leased premises by the invitation of the tenant are those owed to the tenant himself." 91 U.S.App. D.C. at 158, 202 F.2d at 323. Ms. Settles, an employee of the tenant, therefore cannot distinguish her situation from that of the tenant itself.

Ms. Settles also relies on the decision of the Maryland Court of Appeals in *Matthews v. Amberwood Assocs. Ltd. P'ship,* 351 Md. 544, 719 A.2d 119 (1998). In that case, Ms. Morton, a tenant, kept a pit bull named Rampage in her apartment, in violation of a "no pets" clause in the lease. There was evidence that agents of the landlord were aware of the presence of Rampage in the apartment, but the landlord took no action. The pit bull attacked and killed the small child of an invitee of the tenant. The child's parents brought suit against the landlord for wrongful death and under Maryland's survival statute, and the court, by a vote of 4:3, sustained the right of the plaintiffs to recover. The court reasoned:

> The tenant Morton did not have exclusive control over the leased premises because the lease gave the landlord a degree of control. The landlord retained control over the presence of a dog in the leased premises by virtue of the "no pets" clause in the lease. The lease plainly stated that breach of the "no

> pets" clause was a "default of the lease." Such a default would enable the landlord to bring a breach of lease action to terminate the tenancy pursuant to Code (1974, 1996 Repl.Vol., 1997 Supp.), § 8–402.1 of the Real Property Article. Even before bringing such an action, the landlord, when it first received notice of the dangerous incidents involving Rampage, could have informed Morton that harboring the pit bull was in violation of her lease, could have told her to get rid of the aggressive animal, and could have threatened legal action if she failed to do so. If the landlord had taken these steps, it would have been likely that Morton would have gotten rid of the pit bull, particularly because she did not own him. If she refused to get rid of the dog, the landlord could then have instituted legal action. The record in this case, however, shows that the landlord did nothing.

*Id.* at 125–26 (footnote omitted).

A comparable argument could theoretically be made on Ms. Settles' behalf here. As in *Matthews,* the landlord Redstone was aware that the tenant Payless had apparently violated the lease by failing to provide the landlord with a copy of the required air conditioning service contract. The landlord therefore had reason to believe that the air conditioning was not being adequately serviced and maintained. Redstone could have taken, but did not take, legal action or other steps to enforce the terms of the lease. Had Redstone done so, then the requisite maintenance might well have been performed and, if so, then the accident to Ms. Settles would have been avoided.

But the court in *Matthews* took pains to avoid the impression that its reasoning would impose liability on the landlord for

---

It is an established rule that where the landlord has no existing obligation to repair premises, a promise by him to repair is

*nudum pactum* unless supported by a new consideration.

every lease violation by a tenant that resulted in injury to a third party. In the court's words, "we do not suggest that a landlord is responsible for most negligent conditions in leased apartments, including conditions covered by provisions in a lease." *Id.* at 131. The court's decision was based largely on the fact, discussed at length in the opinion, that "[t]he tenant Morton was maintaining an extremely dangerous instrumentality." *Id.* at 126. We do not believe that the decision in *Matthews*, grounded in large part on the very specific dangers posed by pit bulls, can provide substantial solace to Ms. Settles here.[5]

### IV.

For the foregoing reasons, the judgment appealed from is

*Affirmed.*

---

5. *Cf. District of Columbia v. Howell,* 607 A.2d 501, 504–05 (D.C.1992) (an employer may not delegate away responsibility for a plaintiff's injuries where the work performed by a retained independent contractor is inherently dangerous); *Levy v. Currier,* 587 A.2d 205, 209 (D.C.1991) (same).