******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## SAMUEL MCGEE *v.* 456 SACKETT WDS ASSOCIATES, LLC, ET AL.
### (AC 47253)

Seeley, Westbrook and Norcott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment rendered after it granted the defendants' motion for summary judgment on his complaint, which alleged that he fell and was injured when he stepped on a defective wooden floorboard at the defendants' property, which had been leased to a tenant. The plaintiff claimed, inter alia, that the court improperly determined that no genuine issues of material fact existed as to whether the defendants were in possession or control of the area where the plaintiff allegedly was injured. *Held*:

The trial court properly granted the defendants' motion for summary judgment, as there was no genuine issue of material fact that the plaintiff's alleged injury occurred in an area of the leased property over which the defendants did not have possession or control and which the tenant was responsible for maintaining and repairing.

This court did not need to address the merits of the plaintiff's claim that the trial court improperly relied on evidence outside of the lease, as the clear and unambiguous language of the lease itself was sufficient to demonstrate that the defendants did not have possession or control of the area where the plaintiff allegedly was injured.

The plaintiff's claim that the trial court improperly found facts and misconstrued the lease in determining that the area where he allegedly fell was not part of the structure or foundation of the premises was unavailing, as the documents the plaintiff submitted in opposition to the defendants' motion for summary judgment did not relate directly to whether the defendants retained possession or control of the relevant area of the property and, thus, did not demonstrate the existence of a factual dispute concerning possession or control.

Argued April 22—officially released August 12, 2025

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the defendants' motion for summary

judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Michael S. Taylor*, with whom, on the brief, was *Corrinne A. Burlingham*, for the appellant (plaintiff).

*James E. Wildes*, for the appellees (defendants).

*Opinion*

SEELEY, J. The plaintiff, Samuel McGee, appeals from the summary judgment rendered by the trial court in favor of the defendants, 456 Sackett WDS Associates, LLC (Sackett, LLC), and Elm City Industrial Properties, Inc. (Elm City), in this premises liability action arising out of an incident in which the plaintiff allegedly was injured due to a defective wooden floorboard on property owned by the defendants. On appeal, the plaintiff claims that the court improperly determined that no genuine issues of material fact exist as to whether the defendants were in possession or control of the area of the property where the plaintiff allegedly was injured. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as alleged in the complaint or as otherwise undisputed in the record and viewed in the light most favorable to the plaintiff as the nonmoving party, and procedural history are relevant to our resolution of this appeal. The plaintiff commenced this action by way of a two count complaint on April 21, 2022, setting forth claims of negligence against each of the defendants. In his complaint, the plaintiff alleged that, on or about May 23, 2020, he was a "business invitee" at a warehouse located at 456 Sackett Point Road in North Haven (property) when he was injured after stepping on a defective wooden floorboard and falling. The plaintiff alleged that the property was owned, managed or leased by the defendants, who had,

or should have had, notice and knowledge of the condition that caused his injury but neglected to remedy it. The plaintiff further alleged that, as a result of his fall, he suffered various physical injuries and incurred, and may continue to incur, medical expenses, a loss of income and earning capacity, and a loss of the ability to perform his usual occupational duties. On July 14, 2022, the defendants filed an answer and asserted, as a special defense, that the plaintiff's alleged injuries were caused by his own negligence. That same day, the plaintiff replied to the defendants' answer and denied each allegation contained in the special defense.

On September 23, 2022, the defendants filed a motion for summary judgment as to both counts of the complaint, and a supporting memorandum of law, in which they claimed that no genuine issues of material fact existed and that they were entitled to judgment as a matter of law. Specifically, the defendants argued that they were not liable to the plaintiff as a matter of law because there was no genuine issue of material fact that they did not have possession or control of the property where the plaintiff allegedly was injured, and, therefore, they did not owe a duty of care to the plaintiff. In support of their motion for summary judgment, the defendants submitted, inter alia, an affidavit of Stephen DiCapua, a member of Sackett, LLC. DiCapua averred in his affidavit, inter alia, that he and Elm City are members of Sackett, LLC; Sackett, LLC, has owned the property since February, 2017; Sackett, LLC, has no responsibility for maintaining or repairing the area where the plaintiff allegedly was injured; and, pursuant to the terms of a lease agreement covering the property, Sackett, LLC, is the landlord and United Parcel Service, Inc. (UPS), is the tenant of the property, and the responsibility for maintaining and repairing the area where the plaintiff allegedly was injured belonged to UPS as the tenant.

As further support for their motion for summary judgment, the defendants submitted (1) the May 30, 1985 lease agreement between the landlord, Jacob M. Kaplan in his capacity as trustee,[1] and the tenant, UPS, (2) an amendment to the lease dated December 29, 1986, (3) a letter on behalf of UPS dated November 9, 1994, indicating a willingness to renew the lease, (4) an amendment to the lease dated April 17, 1998, (5) an amendment to the lease dated May 31, 2006, (6) an amendment to the lease dated November 17, 2015, (7) an assignment and assumption of leases and security deposits dated February 1, 2017,[2] (8) excerpts from the plaintiff's deposition and (9) photographs of the area where the plaintiff allegedly was injured.

The plaintiff filed an objection to the defendants' motion for summary judgment on February 1, 2023. In his objection, the plaintiff argued that "the terms of the lease, when read as a whole, create a shared responsibility for repairs on the premises . . . [and] [t]herefore, th[e] [c]ourt [could not] conclude as a matter of law, that one party had exclusive control and possession of the premises . . . ." In support of his objection, the plaintiff submitted a photograph of the area where he allegedly was injured, excerpts from the deposition of DiCapua, and an Occupational Safety and Health Administration injury and illness incident report form (OSHA incident report) completed by the plaintiff concerning his injury. The defendants thereafter filed a reply to the plaintiff's objection, arguing that the evidence submitted by the plaintiff did not establish that the lease creates a shared responsibility between landlord and tenant to repair the property and attaching

---

[1] Kaplan executed the lease agreement in his capacity as trustee of four different trusts that possessed ownership interests in the property.

[2] The assignment and assumption of leases and security deposits document was executed by Kaplan's successor in interest to the lease and Sackett, LLC. Pursuant to this document, Sackett, LLC, assumed all of the obligations of being the landlord with respect to the property.

excerpts from a deposition of Michael Mols[3] and an affidavit of Ericka Lyons Golia.[4]

On December 12, 2023, the trial court granted the defendants' motion for summary judgment and issued a memorandum of decision setting forth its reasoning. In its memorandum of decision, the court concluded, on the basis of the plain language of the lease and the other documentary evidence submitted by the defendants in support of their motion for summary judgment, that the defendants had met their burden of establishing

---

[3] In the deposition excerpts provided by the defendants, Mols testified, inter alia, that he is employed as a building and systems engineering manager for UPS, his responsibilities in that position include maintaining UPS facilities and making sure equipment at the facilities is "running and safe," and he is familiar with the UPS facility located at the property, had visited it several times and recognized the area depicted in photographs of where the plaintiff allegedly was injured. He further testified that the photographs of the area show a "conveyor [belt] . . . [a]nd the platform . . . [that] the employees will be working on. There would be a package car backed up to that—that wooden piece. We call that a 'wooden bumper,' a dock bumper, essentially. The package cars back up to that . . . [a]nd there's a conveyor belt . . . to carry the packages from that conveyor and load it into the package car." Mols also testified that the photograph of the area depicts "a concrete pad that the employees work from. . . . The conveyor belt runs parallel with that platform, and then we have package cars backed up to the platform. So [the employees are] pulling packages off of that [conveyor] belt and loading them onto the package car." Mols testified that UPS occasionally has to make repairs to or replace the "wooden bumper," due to "wear and tear" caused by UPS "package cars" and "the boots of the [UPS] employees," and that, in such an event, an outside contractor would be hired to do so, the landlord would not be involved and it would be considered an "internal UPS repair" because "[i]t's UPS equipment," the "wooden bumper," "[t]he concrete [platform], the floor, everything in this picture, [is] [UPS's] responsibility for maintenance. . . . It's my job."

[4] The affidavit of Lyons Golia stated, inter alia, that she is employed as a building manager for UPS and worked at the UPS facility located at the property, that a photograph of the area where the plaintiff allegedly was injured depicts "a wooden bumper attached to a platform that includes a . . . conveyor [belt]," and that UPS, not the landlord, maintained those items. Her affidavit further stated that, if or when it is determined that the "wooden bumper" depicted in the photograph needs to be "repaired or replaced," UPS would not ask the landlord to make the repair or pay for it but would hire a contractor to do so.

that there was no genuine issue of material fact that they did not owe a duty of care to the plaintiff because they did not possess or control the area of the property where he allegedly was injured, and that "[t]he plaintiff . . . [then] failed to demonstrate through competent evidence that there is a genuine issue of material fact as to who possessed and controlled the subject area." This appeal followed.

As a preliminary matter, we set forth our standard of review. "The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . A material fact . . . [is] a fact which will make a difference in the result of a case. . . .

"It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute. . . . A party

seeking summary judgment has the considerable burden of demonstrating the absence of any genuine issue of material fact because litigants ordinarily have a constitutional right to have issues of fact decided by a [jury] . . . .

"On appeal [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary . . . . In deciding a motion for summary judgment, [i]ssue finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Tran* v. *Woodworth*, 225 Conn. App. 514, 523–25, 317 A.3d 117 (2024).

We next turn to the well settled law of negligence and premises liability relevant to the present case. "In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury. . . . The general rule regarding premises liability in the landlord-tenant context is that landlords owe a duty of reasonable care as to those parts of the property over which they have retained control. . . . [L]andlords [however] generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant. . . . [L]iability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property. . . . Thus, the dispositive issue in deciding

whether a duty exists is whether the [defendant] has any right to possession and control of the property. . . .

"Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word control has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee. . . . Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue. . . . Although questions of fact ordinarily are not decided on summary judgment, if the issue of control is expressed definitively in the lease, it becomes, in effect, a question of law." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *Postal Holdings, LLC*, 199 Conn. App. 312, 318–19, 235 A.3d 674, cert. denied, 335 Conn. 969, 240 A.3d 285 (2020). Accordingly, "[w]e have held that when parts of a premises or a property are leased to and in the exclusive possession and control of the tenant, the landlord does not owe a duty of reasonable care because in that instance, the landlord does not have possession or control of the property." *Raczkowski* v. *McFarlane*, 195 Conn. App. 402, 414, 225 A.3d 305 (2020).

The essence of the plaintiff's claim on appeal is that the trial court improperly rendered summary judgment in favor of the defendants and determined that no genuine issues of material fact existed. The plaintiff's argument in support of this claim has two main components. The first relates to the issue of control and possession of the premises. In connection therewith, the plaintiff asserts that the court "applied the wrong standard to its analysis" when determining which party retained

possession and control of the property under the lease, as the court, after finding that the language of the lease was clear and unambiguous, considered the lease together with the affidavit of Lyons Golia and Mols' deposition testimony, instead of considering only the lease. The plaintiff also asserts that the court errone-ously interpreted the lease because certain lease provi-sions demonstrate that the defendants reserved control of the area of the property where the plaintiff was injured. The second component of the plaintiff's argu-ment concerns the area of the premises where the alleged defective condition existed. In this respect, the plaintiff contends that the court improperly found facts and misconstrued the relevant terms of the lease when it determined that the defective area where the plaintiff allegedly fell was not part of the structure or foundation of the premises.[5] Specifically, the plaintiff contends that the defendants failed to present evidence affirmatively demonstrating that the wooden floorboard at issue is not a structural part of the property, for which the defendants are responsible pursuant to the lease, and that he submitted evidence in opposition to the motion for summary judgment on this issue that does give rise to a genuine issue of material fact as to whether the wooden floorboard is considered a structural part of the property. The plaintiff also contends that the court improperly made a factual finding that the defect was not structural. We are not persuaded.

We first consider whether the defendants met their initial burden of demonstrating the lack of any genuine issues of material fact, which would entitle them to judgment as a matter of law. See *Tran* v. *Woodworth*,

---

[5] We note that, whether the defective area where the plaintiff allegedly was injured was part of the structure or foundation of the premises necessarily involves an examination of the language of the lease; therefore, although the plaintiff raises separate arguments concerning possession and control and the structural nature of the area where he allegedly fell, we address them together.

supra, 225 Conn. App. 523–25. The complaint alleges that the plaintiff was "injured as he was walking . . . on or near a loading dock" by a "defective . . . wooden floorboard" located on the property. In support of their motion for summary judgment, the defendants argued that, "[u]nder the lease, UPS has always been responsible for maintaining and repairing" the relevant area of the property, and the defendants submitted, inter alia, the lease agreement and a series of related documents showing that UPS is a tenant at the property, which is owned by the defendants.

"In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court. . . . Furthermore, when the language of the [lease] is clear and unambiguous, [it] is to be given effect according to its terms. A court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [lease] must emanate from the language used in the [lease] rather than from one party's subjective perception of [its] terms." (Citation omitted; internal quotation marks omitted.) *Cohen* v. *Postal Holdings, LLC*, supra, 199 Conn. App. 323–24.

The plaintiff contends that "the trial court acknowledged that, where the language of the lease is clear

and unambiguous, the intent of the parties is to be determined by the terms of the contract alone''; see *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 622–23, 987 A.2d 1009 (2010); but that the court, nevertheless, ''relied on evidence outside the supposedly clear terms of the contract in reaching its conclusions about the contract's meaning.'' In light of our plenary review of the court's decision, we need not address the merits of this argument because we conclude that the language of the lease is clear and unambiguous and, by itself, is sufficient to demonstrate that the defendants did not have possession and control of the area where the plaintiff allegedly was injured. See *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 775, 216 A.3d 830 (2019) (recognizing that ''[w]hen the facts underlying a claim on appeal are not in dispute and that claim is subject to plenary review, the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal'' (internal quotation marks omitted)).

The plain language of the lease between the defendants and UPS definitively expresses that possession and control of the relevant area of the property is vested in the tenant. In particular, paragraph 6 of the lease, titled ''Repairs and Maintenance of the Property,'' provides in relevant part: ''It is *expressly understood that the* [*l*]*andlord is only responsible for repairs to the structural part of the* [*d*]*emised* [*p*]*remises which shall include the roof, the utility lines to the point of entry to the building, the foundation and the bearing columns* unless the conditions necessitating the repairs to such structural parts shall have been caused by the [t]enant, its agents or servants.'' (Emphasis added.) The plaintiff's complaint does not allege that he was injured by a defect that existed on a ''structural part'' of the property that the defendants were responsible for repairing

and maintaining, which the lease defines as including the property's "roof" and "foundation," as well as certain "utility lines" and "bearing columns" on the property. Instead, the plaintiff alleges only that he was injured "as he was walking . . . on or near a loading dock" by a "defective, rotting, and splintering wooden floorboard . . . ."[6]

Our determination that the defendants did not have possession or control of the area of the property where the plaintiff allegedly was injured also is supported by paragraph 5 of the lease, titled "Alterations." As previously stated, the plaintiff's complaint alleges that he was "injured as he was walking . . . *on or near a loading dock*," and paragraph 5 of the lease provides in relevant part: "[A]t the end of the initial term or renewal terms, or in the event of termination . . . the [t]enant shall at its own cost and expense, remove the conveyor belts *together with the docks utilized in the conveyor belt system installed on the [d]emised [p]remises by the [t]enant . . . .* [The] [t]enant shall have the right to remove all of its trade fixtures and *equipment* at any time during the term of this [l]ease."[7] (Emphasis

---

[6] The plaintiff's argument that the trial court improperly made a factual finding that the defective wooden plank was not " 'structural' " is unavailing. First, we do not agree that such a determination amounts to a factual finding, as it stemmed from the court's interpretation of the clear language of the lease, and, when contract language is clear and unambiguous, its interpretation is a question of law for the court. See, e.g., *Cohen* v. *Postal Holdings, LLC,* supra, 199 Conn. App. 323–24. Moreover, in our plenary review of the court's decision, we have determined, as a matter of law, on the basis of the clear and unambiguous language of the lease, that the alleged defective condition of the premises did not exist on a structural part of the demised premises.

[7] The plaintiff argues that the following language in paragraph 5 of the lease gives rise to a genuine issue of material fact as to possession or control: "[The] [t]enant shall have the right to make non-structural and structural alterations and improvements (other than to the exterior walls, roof, foundations or bearing columns) which do not impair or weaken the existing improvements without [the] [l]andlord's prior written consent. [The] [t]enant shall provide [the] [l]andlord with written notice of any substantial structural repairs made by [the] [t]enant to the [d]emised [p]remises. Except as afore-

added.) Thus, given the allegations of the plaintiff's complaint and the plain language of the lease, there is no genuine issue of material fact that the plaintiff's alleged injury occurred on a loading dock that was installed on the property by UPS, over which the defendants did not have possession or control.

The plaintiff argues that paragraph 14[8] of the lease gives rise to a genuine issue of material fact as to the issue of possession or control. Paragraph 14, however, grants the defendants a right of entry only for the purposes of inspecting, showing or making repairs, alterations or improvements to the property, and our

said, [the] [t]enant shall make no alterations, or improvements in or to the [d]emised [p]remises without [the] [l]andlord's prior written consent, which consent shall not be unreasonably withheld or delayed." We reject this argument.

The portion of paragraph 5 on which the plaintiff relies indicates that the tenant retains control over "non-structural and structural" areas of the property *for the purpose of making alterations and improvements*, and that the landlord's written consent is required to undertake "substantial" structural repairs. It does not create an ambiguity as to whether the defendants retained possession or control over the relevant area of the property, as the plaintiff did not allege in his complaint or submit documentary evidence establishing that his alleged injury occurred on a structural area of the property, or that repairing the defective wooden floorboard would have constituted a substantial structural repair for which the written consent of the landlord would have been needed. See *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 309, 991 A.2d 1105 (affirming summary judgment on ground that defendants did not retain possession or control of leased premises when plaintiffs "merely referred to sections of the contract under which the lessor needed the [landlord's] approval prior to taking some action"), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010); see also *Margarita O.* v. *Fernando I.*, 231 Conn. App. 190, 206, 333 A.3d 530 ("the mere fact that the parties advance different interpretations of the [contract] language in question does not necessitate a conclusion that the language is ambiguous" (internal quotation marks omitted)), cert. denied, 352 Conn. 904, 335 A.3d 845 (2025).

[8] Paragraph 14, titled "Landlord's Right of Entry," provides in relevant part: "[The] [l]andlord or [the] [l]andlord's agents shall have the right to enter the [d]emised [p]remises during normal business hours upon reasonable notice to examine the same, and to show them to prospective purchasers or mortgagees of the [d]emised [p]remises, and to make such repairs, alterations, improvements or additions as [the] [l]andlord may deem necessary or desirable . . . ."

Supreme Court has held that, under a similar lease provision, a landlord does "not reserve control . . . of the premises leased . . . ." *Monarch Accounting Supplies, Inc.* v. *Prezioso*, 170 Conn. 659, 665, 368 A.2d 6 (1976);[9] accord *Stone* v. *Sullivan*, 300 Mass. 450, 454, 15 N.E.2d 476 (1938) ("[t]he reservation of a right in the lessor to enter upon the premises for various purposes and to 'make repairs and alterations if he should elect so to do,' imports no . . . reservation of control"); *Dill* v. *Lahr*, 194 App. Div. 3d 1473, 1475, 148 N.Y.S.3d 582 (2021) (recognizing "general principle" that landlord's "reservation of the rights to visit or to inspect the premises and to approve certain alterations, additions, or improvements . . . does not by itself establish the requisite degree of control to support the imposition of liability" (internal quotation marks omitted)). Similarly, paragraph 14 grants the landlord only a reversionary interest in the property, and the plaintiff has not presented any documentary evidence demonstrating that the defendants previously had repaired the defective wooden floorboard that allegedly injured him. As such, the defendants' right of entry under paragraph 14 does not give rise to a genuine issue of material fact as to control or possession of the premises.

Consequently, by submitting the lease in support of their motion for summary judgment, the defendants met their initial burden of demonstrating the lack of any genuine issues of material fact that would preclude

---

[9] In *Monarch Accounting Supplies, Inc.*, a lease provision gave the landlord " 'the right to enter into and upon said premises, or any part thereof, at all reasonable hours for the purpose of examining the same, or making such repairs or alterations therein as may be necessary for the safety and preservation thereof.' " *Monarch Accounting Supplies, Inc.* v. *Prezioso*, supra, 170 Conn. 664. Our Supreme Court rejected the argument that, on the basis of this lease provision, the landlord retained control of the leased premises because "the provisions for repair and the limited nature of the [landlord's] right to enter only admit of a reversionary interest in the [landlord]." Id., 664–65.

judgment as a matter of law. See *Ready* v. *New Canaan*, 232 Conn. App. 487, 493, 336 A.3d 1252 (2025) ("[t]o satisfy his burden [on summary judgment] the movant must make a showing that it is quite clear what the truth is" (internal quotation marks omitted)). For that reason, we next must determine whether the documentary evidence submitted by the plaintiff in opposition to the defendants' motion for summary judgment gives rise to a genuine issue of material fact. See *Tran* v. *Woodworth*, supra, 225 Conn. App. 523–25. The plaintiff argues that his evidentiary submissions demonstrate that the defect at issue existed on a "structural part" of the property, namely, its foundation. We are not persuaded.

The evidence the plaintiff presented in opposition to the defendants' motion for summary judgment consisted of a photograph of the area where he allegedly was injured, excerpts from DiCapua's deposition purportedly demonstrating that the defendants had constructive notice of the relevant defect, and the OSHA incident report completed by the plaintiff concerning his injury. These documentary submissions, however, do not relate directly to whether the defendants retained possession or control of the relevant area of the property. For instance, the photograph submitted by the plaintiff, in and of itself, does not establish that the defect was part of a "structural part" of the property for which the defendants were responsible. Moreover, even if we assume that the OSHA incident report properly can be considered,[10] it merely describes the "object" that harmed the plaintiff as a "platform" and,

---

[10] The defendants argue that the OSHA incident report should not be considered because it is inadmissible, unauthenticated hearsay. See, e.g., *United Cleaning & Restoration, LLC* v. *Bank of America, N.A.*, 225 Conn. App. 702, 725 n.13, 317 A.3d 2 (2024) ("[i]t is well settled that any evidence considered in connection with a motion for summary judgment must be *admissible*" (emphasis in original)).

like DiCapua's deposition testimony, does not demonstrate the existence of a factual dispute concerning possession or control. See *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 331–32, 308 A.3d 102 (2024) ("in order to successfully oppose a motion for summary judgment by raising a genuine issue of material fact, the opposing party cannot rely solely on allegations that contradict those offered by the moving party . . . such allegations must be supported by counteraffidavits or other documentary submissions that controvert the evidence offered in support of summary judgment" (internal quotation marks omitted)); *Atkinson* v. *Santore*, 135 Conn. App. 76, 84, 41 A.3d 1095 ("Demonstrating a genuine issue of material fact requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . An inference that is based on speculation and is unsupported by the evidence is insufficient to raise a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.)), cert. denied, 305 Conn. 909, 44 A.3d 184 (2012).

In summary, given the allegations in the plaintiff's complaint and the plain language of the lease, we conclude that the lease definitively vests control and possession of the area of the property at issue with the tenant. See *Cohen* v. *Postal Holdings*, *LLC*, supra, 199 Conn. App. 323–24. The trial court, therefore, properly determined that the defendants had met their burden of demonstrating the absence of any genuine issue of material fact concerning their lack of possession and control over the area where the plaintiff allegedly was injured, and the plaintiff, in turn, failed to demonstrate the existence of such a factual dispute. Thus, the defendants did not owe the plaintiff a duty of care and are entitled to judgment as a matter of law. Accordingly,

the trial court properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.