******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHAD E. COHEN ET AL. *v.*
POSTAL HOLDINGS, LLC
(AC 42912)

DiPentima, C. J., and Moll and Devlin, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant for private
nuisance and negligence as a result of harm they allegedly suffered
when the parties had been abutting property owners and the real prop-
erty owned by the defendant allegedly had been in a dangerous condition
that the defendant had failed to prevent or to abate. The defendant's
predecessor lessors executed a ground lease of the property with U
Co., a federal agency, and, subsequently, the defendant became the sole
owner and sole lessor of the subject property. The trial court granted
the defendant's motion for summary judgment. On the plaintiffs' appeal
to this court, *held*:

1. The trial court properly granted the defendant's motion for summary
   judgment as to the claim of negligence and determined that the defendant
   did not maintain control of the property and, thus, did not owe a duty
   of care to the plaintiffs: the ground lease, in clear and unambiguous
   terms, demised full control of the property to U Co. and divested any
   control of the property from the defendant; moreover, this court declined
   to consider whether the defendant exercised de facto control over the
   property, as the ground lease clearly and unambiguously provided that
   U Co. maintained control of the property.

2. The trial court properly granted the defendant's motion for summary
   judgment as to the plaintiffs' private nuisance claim; the ground lease
   demised full control of the property to U Co. and provided that U Co.'s
   responsibility for maintenance shall be fulfilled at such time and in such
   manner as U Co. considers necessary and provided the defendant no
   right to enter the property to perform maintenance or repairs or to
   demand that U Co. maintain the property and, thus, the defendant's
   inaction with regard to the condition of the property could not be
   characterized as causing a negligent or intentional interference with the
   plaintiffs' use and enjoyment of their property.

Submitted on briefs April 22—officially released July 28, 2020

*Procedural History*

Action to recover damages for private nuisance, and
for other relief, brought to the Superior Court in the
judicial district of Danbury, where the plaintiffs filed an
amended complaint; thereafter, the court, *Krumeich,
J.*, granted the defendant's motion for summary judg-
ment and rendered judgment thereon, from which the
plaintiffs appealed to this court. *Affirmed.*

*Beverley Rogers*, submitted a brief for the appel-
lants (plaintiffs).

*Matthew G. Conway* and *Raymond M. Gauvreau*
submitted a brief for the appellee (defendant).

*Opinion*

MOLL, J. The plaintiffs, Chad E. Cohen and Kirsten Cohen, appeal from the summary judgment rendered by the trial court in favor of the defendant, Postal Holdings, LLC, on their operative two count complaint sounding in negligence and private nuisance. On appeal, the plaintiffs claim that the trial court improperly concluded that (1) the defendant was not liable for negligence on the ground that there was no genuine issue of material fact that the defendant did not exercise control over the leased premises at issue and, therefore, did not owe a duty of care to the plaintiffs, who, at all relevant times, owned abutting property, and (2) the defendant was not liable for private nuisance on the ground that there was no genuine issue of material fact that the defendant did not interfere with the plaintiffs' use and enjoyment of their abutting property. We disagree, and, accordingly, we affirm the summary judgment of the trial court.[1]

The following facts and procedural history are relevant to our resolution of this appeal. In 1982, Connecticut Equities Corp. and Edward H. Benenson (original lessors) executed a ground lease with the United States Postal Service (USPS) pursuant to which the original lessors demised, leased, and rented to USPS real property now known as 26 and 28 Catoonah Street in Ridgefield. Paragraph 8 of the ground lease provided: "[USPS], during the term of this lease and any options hereunder, hereby agrees to save harmless and indemnify the Lessor from all claims, loss, damage, actions, causes of action, expense and liability resulting from the use of the demised property by [USPS] whenever such claims, loss, damage, actions, causes of action, expense and liability arise from the negligent or wrongful act or omission by an employee while acting within the scope of his employment, under circumstances where [USPS], if a private person, would be liable in accordance with the law of the place where the negligent or wrongful act or omission occurred." Paragraph 9 of the ground lease provided in relevant part: "Except as otherwise provided herein, [USPS], at its own cost and expense, shall construct and maintain all buildings, structures and improvements on the demised premises. . . . [USPS'] responsibility for maintenance shall be fulfilled at such time and in such manner as [USPS] considers necessary."

In 1983, the original lessors and USPS executed an amendment to the ground lease, which provided, inter alia, that USPS was prohibited from constructing any fences or barriers on the leased premises with the exception of a proposed chain link fence described in the amendment. The amendment further provided that all terms and conditions of the ground lease not modified thereby, which included paragraphs 8 and 9, remained in full force and effect.

Prior to December 13, 2006, Lisa Quattrocchi, Amy Aronson, and the estate of Edward H. Benenson (successor lessors) acquired title to 26 and 28 Catoonah Street as well as the original lessors' interest in the ground lease. On December 13, 2006, the successor lessors and USPS executed a second amendment to the ground lease, which, inter alia, created a new schedule of rents. The amendment further provided that all terms, conditions, and covenants of the ground lease not modified thereby, which included paragraphs 8 and 9, remained in full force and effect.

In 2010, by way of a quitclaim deed, the defendant became the sole owner of 26 and 28 Catoonah Street. In 2011, by way of an assignment and assumption of the ground lease, the defendant became the sole lessor of 26 and 28 Catoonah Street.

On October 8, 2013, the plaintiffs commenced the present action against the defendant, raising one count sounding in private nuisance. In their original complaint, the plaintiffs alleged, inter alia, that 28 Catoonah Street (property)[2] had consisted of an "unused lot with an abandoned structure in an obvious state of severe disrepair and neglect" since approximately 2006, and that, as a result of the defendant's failure to prevent or to abate the dangerous condition of the property, they were unable to sell their abutting property.

On March 11, 2014, the defendant filed a motion to implead USPS, which the trial court, *Ozalis*, *J.*, granted on April 16, 2014. On May 16, 2014, the defendant served a third-party complaint on USPS, alleging common-law and contractual indemnification. On June 4, 2014, pursuant to 28 U.S.C. § 1442 (a) (1) (2012), USPS removed the matter to the United States District Court for the District of Connecticut. See *Cohen* v. *Postal Holdings, LLC*, United States District Court, Docket No. 3:14CV800 (AWT) (D. Conn. June 4, 2014).

After the matter had been removed to federal court, the plaintiffs filed an amended two count complaint sounding in private nuisance and negligence. The defendant answered the amended complaint and asserted several special defenses.

On June 20, 2014, USPS filed a motion to dismiss the defendant's third-party complaint for lack of subject matter jurisdiction. On January 15, 2015, the District Court granted USPS' motion to dismiss, thereby terminating USPS as a party to the matter.

On October 15, 2015, the defendant filed a motion for summary judgment as to both counts of the plaintiffs' amended complaint. The plaintiffs objected to the motion only insofar as the defendant was moving for summary judgment on their private nuisance claim. On June 1, 2016, the District Court issued its ruling granting the defendant's motion for summary judgment in toto. Thereafter, the plaintiffs appealed from the summary

judgment to the United States Court of Appeals for the Second Circuit.

On October 11, 2017, the Second Circuit vacated the District Court's summary judgment on the ground that the District Court, having properly dismissed the defendant's third-party complaint against USPS for lack of subject matter jurisdiction, lacked supplemental jurisdiction over the plaintiffs' state law claims. See *Cohen* v. *Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017). The Second Circuit remanded the matter to the District Court to remand the plaintiffs' state law claims to the Superior Court for further proceedings consistent with its opinion. Id. On August 2, 2018, the District Court remanded the matter to the Superior Court.

On November 9, 2018, the plaintiffs filed a revised two count complaint, which became their operative complaint, sounding in private nuisance and negligence. In support of both counts, the plaintiffs alleged, inter alia, that, at all relevant times, the property was in a dangerous condition[3] that the defendant had failed to prevent or to abate, thereby causing them harm while they had been abutting property owners.[4] On November 13, 2018, the defendant filed an answer denying the material allegations of the operative complaint and asserting several special defenses.

On December 14, 2018, the defendant filed a motion for summary judgment, accompanied by a supporting memorandum of law and exhibits, as to both counts of the plaintiffs' operative complaint. On January 28, 2019, the plaintiffs filed a memorandum of law in opposition to the motion for summary judgment with appended exhibits. On February 19, 2019, the defendant filed a reply brief with appended exhibits.

On March 28, 2019, after having heard argument on March 25, 2019, the trial court, *Krumeich, J.*, issued a memorandum of decision granting the defendant's motion for summary judgment. On April 17, 2019, the plaintiffs filed a motion to reargue, which the court denied on April 22, 2019. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before turning to the plaintiffs' claims on appeal, we set forth the relevant standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him [or her]

to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rutter* v. *Janis*, 334 Conn. 722, 729, 224 A.3d 525 (2020).

I

The plaintiffs first claim that the trial court improperly granted the defendant's motion for summary judgment as to their negligence claim on the ground that there was no genuine issue of material fact that the defendant did not exert control over the property and, therefore, did not owe a duty of care to the plaintiffs. We disagree.

"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury. . . . The general rule regarding premises liability in the landlord-tenant context is that landlords owe a duty of reasonable care as to those parts of the property over which they have retained control. . . . [L]andlords [however] generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant." (Internal quotation marks omitted.) *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 308, 991 A.2d 1105, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). "[L]iability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property. . . . Thus, the dispositive issue in deciding whether a duty exists is whether the [defendant] has any right to possession and control of the property." (Internal quotation marks omitted.) *Millette* v. *Connecticut Post Ltd. Partnership*, 143 Conn. App. 62, 70, 70 A.3d 126 (2013).

"Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word control has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee. . . . Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue. . . . Although questions of fact ordinarily are not decided on summary judgment, if the issue of control is expressed definitively in the lease, it becomes, in effect, a question of law." (Citation omitted; emphasis omitted; internal quotation marks

omitted.) *Fiorelli* v. *Gorsky*, supra, 120 Conn. App. 308–309.

The following additional facts and procedural history are relevant to our disposition of the plaintiffs' claim. In their operative complaint, the plaintiffs alleged that the defendant was liable for negligence because it failed to prevent or to abate the dangerous condition of the property. More specifically, the plaintiffs alleged that the defendant failed either to enforce its purported right under the ground lease to require USPS to maintain the property or to take other action to prevent or to abate the dangerous condition thereof.

In its memorandum of law in support of its motion for summary judgment, the defendant claimed that there was no genuine issue of material fact that it did not have possession or control of the property. The defendant asserted that paragraph 9 of the ground lease contained clear and unambiguous language demising complete possession and control of the property, along with the responsibility for the maintenance thereof, to USPS. Without possession or control of the property, the defendant posited, it did not owe a duty of care to the plaintiffs, and, therefore, it was not liable for negligence.

In their memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiffs argued that there existed a genuine issue of material fact as to whether the defendant exercised control over the property. First, the plaintiffs contended that the terms of the ground lease could be construed to bestow upon the defendant a right, obligation, and duty to prevent or to abate the dangerous condition of the property or to require USPS to maintain the property, and, thus, there existed an ambiguity as to whether the defendant exerted control over the property. The plaintiffs relied on the fact that the portion of paragraph 9 of the ground lease providing that USPS, "at its own cost and expense, shall construct and maintain all buildings, structures and improvements on the demised premises" was conditioned by the qualifying clause "[e]xcept as otherwise provided herein." The plaintiffs argued that the indemnification language set forth in paragraph 8 of the ground lease signified that the parties contemplated situations in which USPS might engage in negligent conduct in relation to the property that would require the defendant to take action to cure USPS' negligence, provided that USPS indemnify the defendant, thus constituting an exception to USPS' right and obligation regarding construction and maintenance set forth in paragraph 9. Second, the plaintiffs contended that, notwithstanding the terms of the ground lease, they submitted evidence demonstrating that the defendant had exercised de facto control over the property, for example, by paying property taxes that USPS later reimbursed.

In its reply brief, the defendant countered that (1) the indemnification language set forth in paragraph 8 did not provide the defendant with a right to order USPS to maintain the property or alter the fact that the defendant retained no control or possession of the property, and (2) evidence of the defendant purportedly exercising de facto control over the property was immaterial because the ground lease contained unequivocal terms providing that the defendant had no control or possession of, and thus no responsibility to maintain, the property.

In granting the defendant's motion for summary judgment as to the plaintiffs' negligence claim, the trial court first concluded that the ground lease provided that USPS, rather than the defendant, was in possession and control of the property. The court determined that paragraph 9 of the ground lease gave USPS the right to construct on and to maintain the property. Additionally, the court determined that nowhere in the ground lease did the defendant reserve the right to perform maintenance or repairs that USPS failed to undertake, and the court rejected the plaintiffs' proposition that the indemnification language set forth in paragraph 8 of the ground lease granted such a right. The court then addressed and rejected the plaintiffs' contention that the evidence submitted by them demonstrated that the defendant maintained de facto control of the property. In sum, the court concluded: "[The] [p]laintiffs have failed to submit evidential facts that would raise an issue of fact concerning the [defendant's] control over the property, and thus have provided no basis for recognition of a duty by the [defendant] to maintain or repair the property to abate the conditions of which [the] plaintiffs have complained. Without a duty to act to prevent harm to the plaintiffs, there is no basis for claiming the [defendant's] failure to act was unreasonable."

On appeal, the plaintiffs assert that the court improperly determined that there was no genuine issue of material fact that the defendant did not exert control over the property. Specifically, the plaintiffs claim that (1) the ground lease was ambiguous as to whether the defendant had control of the property, and (2) in the alternative, notwithstanding the terms of the ground lease, evidence that they submitted in opposition to the defendant's motion for summary judgment demonstrated that the defendant exercised de facto control over the property. For the reasons that follow, these claims are unavailing.

A

We first turn to the plaintiffs' claim that the ground lease contained "clearly inapposite and contradictory terms pertaining to issues of control" of the property, and, therefore, the trial court improperly determined

that the terms of the ground lease clearly and unambiguously established that the defendant did not exert control over the property. The plaintiffs observe that paragraph 9 of the ground lease provided USPS with the right and obligation to "construct and maintain all buildings, structures and improvements" on the property "[e]xcept as otherwise provided" in the ground lease. The plaintiffs contend that the indemnification clause set forth in paragraph 8 of the ground lease signaled that "the signatories of the [g]round [l]ease manifestly acknowledged that there could be occasions when . . . USPS might be negligent in its leasehold of the premises and that [the defendant] would cure such negligence, so long as [the defendant] was indemnified by USPS." Thus, the plaintiffs argue, paragraph 8 could be construed as providing the defendant with "the right, obligation, and duty to prevent and [to] abate conditions on its property that might be dangerous or interfere with the rights of others, and to enforce the [g]round [l]ease to prevent such conditions," thereby constituting an exception to USPS' right and obligation to build on and to maintain the property as described in paragraph 9. We are not persuaded.

"In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court." (Citations omitted; internal quotation marks omitted.) *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 275–76, 709 A.2d 558 (1998). "Furthermore, when the language of the [lease] is clear and unambiguous, [it] is to be given effect according to its terms. A court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [lease] must emanate from the language used in the [lease] rather than from one party's subjective perception of [its] terms." (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 8, 931 A.2d 837 (2007).

Mindful of the foregoing principles, we conclude that the ground lease, in clear and unambiguous terms, demised full control of the property to USPS and divested any control of the property from the defendant. The ground lease contained no express language permitting the defendant to enter the property and to per-

form maintenance or repairs, or to demand that USPS maintain the property. By comparison, paragraph 9 of the ground lease explicitly provided that USPS, "at its own cost and expense, shall construct and maintain all buildings, structures and improvements on the demised premises," subject to the qualifying clause stating "[e]xcept as otherwise provided" in the ground lease, and that "[USPS'] responsibility for maintenance shall be fulfilled at such time and in such manner as [USPS] considers necessary." We reject the plaintiffs' contention that the qualifying clause of paragraph 9, when read in conjunction with the indemnification language set forth in paragraph 8, raised an ambiguity as to whether the defendant maintained control of the property. We discern no logical connection between the indemnification language of paragraph 8 and the qualifying clause contained in paragraph 9. As the trial court aptly summarized in its memorandum of decision: "A tenant's failure to maintain the property may give rise to a damages remedy, indemnification or even to termination of the tenancy but those remedies are not the functional equivalent of lease terms requiring a tenant to make repairs or reserving to the landlord the right to step in to make repairs required to maintain the property."[5]

Moreover, our rejection of the plaintiffs' interpretation of the ground lease does not render the qualifying clause of paragraph 9 meaningless. For example, paragraph 21 of the ground lease provided: "It is understood and agreed that as part of the consideration, [USPS] has the right to raze any and all existing structures or improvements, including utilities and lines which now exist on the demised premises and that [USPS] shall not be obligated to rebuild, restore nor make any further [remuneration] for such razing, removal or alteration of such buildings, structures or improvements."[6] Paragraph 21 constituted an exception to USPS' right and obligation to construct and to maintain "all buildings, structures, and improvements" on the property.[7]

In sum, we conclude that the trial court properly determined that, pursuant to the clear and unambiguous terms of the ground lease, the defendant did not maintain control of the property and, as a result, did not owe a duty of care to the plaintiffs. Thus, the plaintiffs' claim fails.

B

We next turn to the plaintiffs' alternative claim that, notwithstanding the terms of the ground lease, the plaintiffs submitted evidence demonstrating that the defendant exerted de facto control over the property. The defendant argues that the ground lease, in unequivocal terms, expressed that the defendant did not maintain control of the property, and, therefore, it is unnecessary to consider whether the defendant exercised de facto control of the property. We agree with the

defendant.

In a premises liability case, it is proper for a court to consider extrinsic evidence to determine whether a lessor reserved control over leased premises *unless* the issue of control is definitely expressed in a lease. As our Supreme Court explained in *LaFlamme* v. *Dallessio*, 261 Conn. 247, 802 A.2d 63 (2002), "[t]he issue of whether the landlord retained control over a specific area of the premises is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . Thus, [u]nless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue. . . . In other words, *if the terms of control are not express between the parties*, the question of who retains control over a specific part of the property is an issue of fact and a matter of intent that can be determined only in light of all the relevant circumstances." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 257; see also *Fiorelli* v. *Gorsky*, supra, 120 Conn. App. 308–309 ("*Unless it is definitely expressed in the lease*, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue. . . . Although questions of fact ordinarily are not decided on summary judgment, *if the issue of control is expressed definitively in the lease*, it becomes, in effect, a question of law." (Citation omitted; emphasis altered; internal quotation marks omitted.)).[8]

As we concluded in part I A of this opinion, the ground lease clearly and unambiguously provided that USPS, rather than the defendant, maintained control of the property. Therefore, we need not consider whether the defendant exercised de facto control over the property.[9]

## II

The plaintiffs next claim that the trial court improperly granted the defendant's motion for summary judgment as to their private nuisance claim on the ground that there was no genuine issue of material fact that the defendant did not interfere with the plaintiffs' use and enjoyment of their property. We disagree.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. . . . The law of private nuisance springs from the general principle that [i]t is the duty of every person to make a reasonable use of his [or her] own property

so as to occasion no unnecessary damage or annoyance to his [or her] neighbor. . . . The essence of a private nuisance is an interference with the use and enjoyment of land." (Citations omitted; internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 352, 788 A.2d 496 (2002). "[I]n order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence." (Citation omitted.) Id., 361. Our Supreme Court has explained that the requirements of a private nuisance claim "relate to the land subject to the nuisance and to the nature of the interference, not to whether the conduct giving rise to the interference was connected with the defendant's ownership or control of any land." *Ugrin* v. *Cheshire*, 307 Conn. 364, 377, 54 A.3d 532 (2012).

The following additional facts and procedural history are relevant to our disposition of the plaintiffs' claim. In their operative complaint, the plaintiffs alleged that the defendant was liable for private nuisance because (1) at the time that it acquired its interest in the ground lease, the defendant was aware that the property was in a dangerous condition, and (2) the defendant failed to enforce its purported right under the ground lease to require USPS to maintain the property or to take other action to prevent or to abate the dangerous condition thereof.

In its motion for summary judgment, the defendant asserted that there was no genuine issue of material fact that it did not engage in conduct that caused the dangerous condition of the property, the maintenance of which was the sole responsibility of USPS, and, therefore, it could not be held liable for any claimed interference with the plaintiffs' use and enjoyment of their property.

In their memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiffs argued that the defendant unreasonably interfered with their enjoyment and use of their property by failing to enforce its purported right under the ground lease to require USPS to maintain the property or to take other action to remediate the dangerous condition thereof, despite knowing of said condition when it assumed the ground lease. In its reply brief, the defendant reiterated that the ground lease conferred on USPS the sole right and obligation to maintain the property, such that it was USPS' conduct in failing to maintain the property that caused any claimed interference with the plaintiffs' use and enjoyment of their property.

In granting the defendant's motion for summary judgment as to the plaintiffs' private nuisance claim, the trial court concluded that the plaintiffs "failed to produce

evidence of conduct by the [defendant] that interfered with [the] plaintiffs' use and enjoyment of their property. . . . [The defendant] had no legal duty to maintain or repair the [property] or to force USPS to do so. . . . Without such [a] duty, the [defendant's] failure to act cannot be characterized as negligent or intentional interference with [the] plaintiffs' use and enjoyment of their property." (Footnotes omitted.)

On appeal, the plaintiffs contend that the trial court improperly concluded that there was no genuine issue of material fact that the defendant did not interfere with their use and enjoyment of their property. More specifically, the plaintiffs assert that the defendant knew that the property was in a dangerous condition when it acquired its interest in the ground lease, but nevertheless failed to enforce its purported right under the ground lease to require USPS to maintain the property or to remediate the property itself and then seek reimbursement from USPS. This claim is unavailing.

As we concluded in part I A of this opinion, the ground lease, in clear and unambiguous terms, demised full control of the property to USPS. The ground lease further provided that USPS' "responsibility for maintenance shall be fulfilled at such time and in such manner as [USPS] considers necessary." The ground lease provided the defendant with no right to enter the property in order to perform maintenance or repairs or to demand that USPS maintain the property. Under these circumstances, the defendant's inaction with regard to the condition of the property cannot be characterized as causing a negligent or intentional interference with the plaintiffs' use and enjoyment of their property.[10] Accordingly, we conclude that the trial court properly granted the defendant's motion for summary judgment as to the plaintiffs' private nuisance claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In its appellate brief, the defendant argues that we should disregard (1) certain documents included in the appendix to the plaintiffs' principal appellate brief that are not part of the trial court record, and (2) certain "unsupported factual assertions" in the plaintiffs' principal appellate brief. The purportedly improper material cited by the defendant has no bearing on our resolution of the plaintiffs' claims on appeal. Therefore, we need not further address the defendant's argument.

[2] The plaintiffs did not allege any liability on the part of the defendant with respect to 26 Catoonah Street, on which USPS operated a postal facility.

[3] In their original complaint, the plaintiffs alleged that an abandoned structure stood on the property. In their operative complaint, the plaintiffs alleged that the abandoned structure had been razed sometime after June 27, 2014. The plaintiffs further alleged in their operative complaint, inter alia, that the condition of the property attracted unsupervised minors and adults, who trespassed, loitered, and possibly engaged in illicit activities on the property, as well as dangerous wildlife.

[4] The record reflects that the plaintiffs purchased their abutting property in 2001 and sold it in 2014.

[5] The plaintiffs assert that, during argument before the Second Circuit on the appeal from the District Court's summary judgment rendered in favor of the defendant, one of the sitting judges commented that the language of paragraph 9 was ambiguous regarding the extent to which USPS had control

of the property. The plaintiffs contend that the comments illustrate that reasonable minds can differ as to whether the language of the ground lease was ambiguous regarding the issue of control of the property. In its decision disposing of the appeal, however, the Second Circuit did not reach the merits of the plaintiffs' claims; instead, it disposed of the appeal on jurisdictional grounds by concluding that the District Court lacked supplemental jurisdiction over the plaintiffs' state law claims. See *Cohen* v. *Postal Holdings, LLC*, supra, 873 F.3d 404. We decline the plaintiffs' invitation to consider any statements made during argument by the judges of the Second Circuit to have precedential or evidential value germane to our analysis.

[6] Paragraph 21 of the ground lease was unaltered by the 1983 and 2006 amendments to the ground lease.

[7] We also observe that the 1983 amendment to the ground lease provided, inter alia, that USPS was prohibited from constructing any fences or barriers on the leased premises other than a chain link fence described in the amendment. The 2006 amendment to the ground lease did not alter the foregoing provision, which constituted another exception to USPS' right and obligation with respect to construction and maintenance set forth in paragraph 9 of the ground lease.

[8] The plaintiffs cite *Martel* v. *Malone*, 138 Conn. 385, 85 A.2d 246 (1951), for the proposition that "even where there is a written lease [that] lodges full control in the lessee, liability can attach to the lessor if, in fact, the lessor exercised actual control." The plaintiffs' reliance on *Martel* is misguided.

In *Martel*, a jury returned a verdict against a lessor for injuries sustained by a third party when he fell down a stairway attached to the outside of a building owned by the lessor that led to a room leased to a lessee. *Martel* v. *Malone*, supra, 138 Conn. 387–88. At the time of the third party's injury, the lessor and the lessee maintained an oral month-to-month lease. Id., 388. The trial court set aside the verdict on the basis that no evidence existed to warrant a finding that the lessor retained control over the stairway. Id., 387. On appeal, our Supreme Court affirmed the trial court's decision. Id., 392. In doing so, the court concluded that, without an express or implied agreement to the contrary, control of the stairway passed to the lessee by virtue of the lease. Id., 390. The court proceeded to determine that (1) there was no evidence of an express agreement providing that the lessor retained control of the stairway, and (2) there was no evidence demonstrating the existence of an implied agreement providing that the lessor retained control over the stairway. Id., 390–92.

Our Supreme Court subsequently cited *Martel* for the proposition that extrinsic evidence was relevant to the issue of control over leased premises when a written lease did not definitely or expressly resolve the issue. See *Panaroni* v. *Johnson*, 158 Conn. 92, 99, 256 A.2d 246 (1969) ("The written lease read as a whole cannot be said to definitely or expressly resolve the issue of control. Thus the actual use of the stairway, the circumstances attending its use, and the evidence as to repairs become relevant to the issue of actual control. *Martel* v. *Malone*, [supra, 138 Conn. 391]."). Thus, *Martel* aligns with the case law establishing that extrinsic evidence concerning the issue of control of leased premises may be considered *unless* the issue is definitely expressed in a lease.

[9] In granting the defendant's motion for summary judgment as to the plaintiffs' negligence claim, in addition to concluding that the defendant did not exert control over the property under the terms of the ground lease, the trial court rejected the merits of the plaintiffs' claim that there was evidence demonstrating that the defendant exercised de facto control over the property. Having concluded that the ground lease unequivocally resolved the issue of control, it was unnecessary for the trial court to consider the merits of the plaintiffs' claim regarding de facto control.

[10] The plaintiffs emphasize that the defendant leased the property to USPS with knowledge that the property was in a dilapidated state. The plaintiffs rely on appellate decisions reflecting that a lessor may be held liable for a nuisance if the nuisance existed when the lease was executed or renewed. See, e.g., *Bergman* v. *Jacob*, 125 Conn. 486, 489–90, 7 A.2d 219 (1939) (lessor not liable for public nuisance caused by condition on premises created by lessee after execution of lease); *Swift & Co.* v. *Peoples Coal & Oil Co.*, 121 Conn. 579, 592, 186 A. 629 (1936) ("Ordinarily a landlord is not liable for a nuisance created upon premises he [or she] has leased where that nuisance did not exist when they were leased or was not a result reasonably to be anticipated from their use for the purpose and in the manner intended. . . . The reason for this rule is that, having leased the premises, the landlord ordinarily is without power to control their use. But if a nuisance arises

from the use of the premises during the period of the lease, he [or she] has it within his [or her] power to abate that nuisance at the expiration of the period for which they were rented and if, knowing that it exists he [or she] takes no steps to this end but renews the lease, liability then attaches." (Citations omitted.)); *Calway* v. *William Schaal & Son, Inc.*, 113 Conn. 586, 592, 155 A. 813 (1931) ("it is settled law that where an owner leases premises upon which there is a nuisance which will continue if they are used for the purpose and in the manner intended he [or she] is liable for damages resulting from that nuisance")

In the present case, the plaintiffs did not allege that the property was in a dangerous condition when the ground lease was executed in 1982. Moreover, the defendant did not become the sole lessor of the property until 2011, well after the ground lease had been executed. In addition, the plaintiffs have not identified any evidence in the record reflecting that a renewal of the ground lease occurred between 2011, when the defendant became the sole lessor of the property, and 2014, when the plaintiffs sold their abutting property. Thus, the present case is distinguishable from those situations involving lessors who executed or renewed leases notwithstanding the presence of conditions on the leased premises that constituted nuisances.

---