******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ROBBINS EYE CENTER, P.C. *v.* COMMERCE PARK ASSOCIATES, LLC, ET AL.
## (AC 44657)

Moll, Clark and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant property owner, C Co., and its property manager, R Co., for, inter alia, damages incurred as a result of the defendants' alleged negligent failure to maintain certain real property in a reasonably safe condition. R, the sole shareholder of the plaintiff, and C Co. entered into a lease for a portion of one of C Co.'s commercial buildings. Although not a party to the lease, the plaintiff occupied the leased premises. The plaintiff initiated the present action, and the trial court rendered judgment in its favor solely with respect to its negligence claim against C Co., determining that C Co. had committed gross negligence and awarding the plaintiff damages, from which C Co. appealed to this court. Thereafter, the trial court granted the plaintiff's application for a prejudgment remedy to secure its judgment, authorizing the plaintiff to attach C Co.'s real and personal property and to garnish any and all debts due and obligations owed to C Co. After determining that the real property subject to the prejudgment remedy order was encumbered by a mortgage that exceeded the property's fair market value, the plaintiff filed a motion to modify, seeking authorization to garnish an account receivable owed to C Co. by R Co. The trial court sustained the defendants' objection to the motion, determining that permitting the plaintiff to garnish the account receivable would be contrary to the source of recovery limitation provision of the lease. Thereafter, in response to the plaintiff's motion to reargue and reconsider the court's order sustaining the defendants' objection, the trial court vacated its prior ruling and granted the plaintiff's motion to modify. The court ordered that the plaintiff was authorized to garnish the account receivable, that payments made thereafter on the account receivable would be held in escrow, and that the escrowed funds could be released only following written authorization of the parties or a court order. Subsequently, this court reversed a portion of the initial judgment rendered in favor of the plaintiff, only with respect to the amount of damages awarded and remanded the case to the trial court with direction to render judgment in the plaintiff's favor in a reduced amount. On remand, the trial court rendered judgment in the plaintiff's favor on its negligence claim against C Co. in accordance with a stipulation executed by the parties, which provided that judgment should enter in the plaintiff's favor in a reduced amount. Thereafter, the plaintiff filed a motion seeking to compel C Co. to deliver to the plaintiff all funds held in escrow and any future payments received on the account receivable. The trial court granted the plaintiff's motion to compel, and the defendants appealed to this court. *Held* that the trial court did not err in granting the plaintiff's motion to compel because the source of recovery limitation provision of the lease did not preclude the plaintiff from collecting the escrowed funds and payments at issue: the lease's source of recovery limitation provision provided, in clear and unambiguous terms, that such provision applied only to R as the tenant and, in contrast to certain other provisions of the lease, did not include language extending its applicability to all entities related to R; moreover, the plaintiff's negligence claim against C Co. was not subject to the lease's source of recovery limitation provision because, by its clear language, that provision applied only to a breach or default by C Co. with respect to its obligations under the lease, and the plaintiff was not a party to the lease and did not assert a claim thereunder but, rather, asserted a tort claim sounding in negligence based on C Co.'s breach of its common-law duty to maintain its property in a reasonably safe condition; furthermore, the defendants' reliance on the lease's negligence waiver and jury trial waiver provisions and the trial court's construction thereof to support its argument that the plaintiff and its negligence claim were subject to the source of recovery limitation

was misplaced, as those provisions contained language extending their applicability to the plaintiff and its claim, which language was absent from the lease's source of recovery limitation provision.

Argued February 14—officially released May 10, 2022

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Krumeich, J.*; thereafter, the court, *Krumeich, J.*, granted the plaintiff's application for a prejudgment remedy; subsequently, the court, *Hon. George N. Thim*, judge trial referee, granted the plaintiff's motion to modify the prejudgment remedy order; thereafter, the court, *Krumeich, J.*, rendered judgment in part for the plaintiff, from which the defendants appealed to this court, *Lavine, Prescott* and *Eveleigh, Js.*, which reversed the trial court's judgment only with respect to the amount of damages awarded and remanded the case to the trial court with direction to render judgment in the plaintiff's favor; subsequently, on remand, the court, *Krumeich, J.*, rendered judgment in the plaintiff's favor on its negligence claim against the named defendant in accordance with a stipulation executed by the parties; thereafter, the court, *Stevens, J.*, granted the plaintiff's motion to compel, and the defendants appealed to this court. *Affirmed.*

*Joseph DaSilva, Jr.*, with whom, on the brief, was *Colin B. Connor*, for the appellants (defendants).

*Aaron A. Romney*, with whom, on the brief, was *James M. Moriarty*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants, Commerce Park Associates, LLC (Commerce Park), and RDR Management, LLC (RDR), appeal from the judgment of the trial court granting a postjudgment motion of the plaintiff, Robbins Eye Center, P.C., seeking an order compelling Commerce Park to deliver to the plaintiff's counsel certain escrowed funds and future payments received by Commerce Park vis-à-vis an account receivable. The dispositive issue raised by the defendants on appeal is whether a provision in a commercial lease executed by Commerce Park and Kim Robbins, who owns the plaintiff and is a nonparty to this matter, precludes the plaintiff from collecting the escrowed funds and payments at issue. We conclude that the lease provision does not bar the plaintiff's collection efforts, and, therefore, we affirm the judgment of the trial court.

The following facts, as drawn from this court's opinion in *Commerce Park Associates, LLC* v. *Robbins*, 193 Conn. App. 697, 220 A.3d 86 (2019), cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 447 (2020), and cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 448 (2020), and procedural history are relevant to our resolution of this appeal. Robbins is an ophthalmologist and the sole shareholder of the plaintiff, which operates an ophthalmological and surgical practice. Id., 702, 704. In 1995, Robbins began leasing space in the lower level of a commercial building in Bridgeport owned by Commerce Park. Id., 704. Pursuant to a lease executed on August 1, 2007 (lease), Robbins rented the entire lower level of the building, consisting of 20,750 square feet (leased premises). Id., 704–705. Robbins then spent $1,186,267 to remodel the leased premises, turning them into a "state-of-the-art eye care center, complete with a surgical center with two operating rooms certified by the state for optical surgery . . . a LASIK facility, and an optical shop." (Internal quotation marks omitted.) Id., 706. Although Robbins was a party to the original and all subsequent leases, the leased premises were occupied by the plaintiff. Id., 704.

In 2016, the plaintiff commenced the underlying action against the defendants.[1] The plaintiff's operative complaint asserted claims sounding in negligence against the defendants; common-law recklessness against Commerce Park only; and violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., against the defendants. The plaintiff's claims were predicated on events that transpired prior to June 30, 2015, when the plaintiff and Robbins vacated the leased premises, including a major flooding incident in 2013 that caused substantial damage to the plaintiff's equipment, materials, and work spaces, and sewage issues in 2015 that resulted in sewer water and waste

flooding the leased premises. See *Commerce Park Associates, LLC* v. *Robbins*, supra, 193 Conn. App. 706–708.

On February 6, 2018, following a seven day trial in July, 2017, the trial court, *Krumeich, J.*, rendered judgment in favor of the plaintiff on its negligence claim against Commerce Park and against the plaintiff as to its remaining claims. With respect to the plaintiff's negligence claim against Commerce Park, the court determined that, pursuant to a negligence waiver provision set forth in the lease, the plaintiff had waived Commerce Park's liability for any ordinary negligence; however, the provision excluded any waiver of liability for conduct constituting " 'gross negligence' . . . ." The court determined that Commerce Park had committed conduct that was grossly negligent and awarded the plaintiff $899,190 in damages, which the court later increased to $958,041.92, plus postjudgment interest. Commerce Park appealed from the portion of the judgment rendered in the plaintiff's favor.[2] *Commerce Park Associates, LLC* v. *Robbins*, supra, 193 Conn. App. 703–704.

On February 14, 2018, the plaintiff filed an application for a prejudgment remedy, seeking to secure the judgment rendered in its favor against Commerce Park by requesting authorization (1) to "attach sufficient property of [Commerce Park] to secure [the judgment], including, but not limited to, any and all of [Commerce Park's] real property and personal property wherever located" and (2) to "garnish any and all debts due and obligations owed to [Commerce Park] . . . wherever held and in whatever form . . . ." On March 2, 2018, Commerce Park filed an objection only as to the scope of the relief requested by the plaintiff. Relying on paragraph 28 (b) of the lease,[3] Commerce Park argued that the plaintiff was limited to seeking attachment of the leased premises and/or rents or property related to the leased premises only. On March 22, 2018, following a hearing held on March 5, 2018, the court granted the plaintiff's application, determining that there was probable cause to believe that the plaintiff would recover a judgment against Commerce Park in the amount of $1,111,328.63, which included postjudgment interest, and authorizing the plaintiff to attach certain real property in Bridgeport owned by Commerce Park beyond the leased premises. In its decision, the court did not expressly address Commerce Park's argument predicated on paragraph 28 (b) of the lease. No appeal was taken from that decision.

On August 2, 2018, the plaintiff filed a motion to modify the prejudgment remedy order to authorize it to garnish an account receivable owed to Commerce Park by RDR, which was Commerce Park's property manager, as the plaintiff had come to believe that the real property subject to the prejudgment remedy order was encumbered by a mortgage that exceeded the property's fair market value.[4] On September 26, 2018, the

defendants filed an objection. On September 27, 2018, following a hearing held on the same day, the court, *Hon. George N. Thim*, judge trial referee, sustained the defendants' objection, determining that permitting the plaintiff to garnish the account receivable "would be contrary to the provisions of [paragraph] 28 (b) of the [lease] . . . ."

On October 18, 2018, the plaintiff filed a motion to reargue and to reconsider the court's September 27, 2018 order sustaining the defendants' objection to the plaintiff's motion to modify the prejudgment remedy order. The plaintiff argued that (1) it did not have a fair opportunity to address the defendants' argument regarding paragraph 28 (b) of the lease because the defendants had raised that argument for the first time at the hearing on the motion to modify, and (2) as reflected in the transcript of the March 5, 2018 hearing held on the plaintiff's application for a prejudgment remedy, Judge Krumeich previously had rejected the defendants' reliance on paragraph 28 (b) in issuing the prejudgment remedy order. In addition, the plaintiff contended that enforcing paragraph 28 (b) would contravene public policy by exempting Commerce Park from liability for its grossly negligent conduct. The defendants did not file a written objection. On December 6, 2018, the court, *Hon. George N. Thim*, judge trial referee, issued an order stating that Judge Krumeich previously had determined that paragraph 28 (b) of the lease (1) does not apply to the plaintiff, which is not a party to the lease, (2) does not apply to a claim of gross negligence, and (3) contravenes public policy. Agreeing with Judge Krumeich's interpretation of paragraph 28 (b), the court vacated its prior ruling and granted the plaintiff's motion to modify. On December 11, 2018, the court ordered that (1) the plaintiff was authorized to garnish and/or attach the account receivable, (2) payments made on the account receivable on or after December 6, 2018, would be held in escrow by Commerce Park's counsel, and (3) the funds held in escrow could not be released without a written agreement of the parties or a court order. That same day, Commerce Park appealed from the court's judgment granting the plaintiff's motion to modify. See *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, Connecticut Appellate Court, Docket No. 42375 (appeal withdrawn October 31, 2019).

On October 22, 2019, this court released its decision reversing the portion of the February 6, 2018 judgment rendered in favor of the plaintiff only with respect to the amount of damages awarded and remanded the case to the trial court with direction to render judgment in the plaintiff's favor in the amount of $741,847.34. *Commerce Park Associates, LLC* v. *Robbins*, supra, 193 Conn. App. 745–46. On October 31, 2019, Commerce Park withdrew its appeal from the judgment granting the plaintiff's motion to modify the prejudgment remedy

order. On February 7, 2020, the court, *Krumeich, J.*, rendered judgment in the plaintiff's favor on its negligence claim against Commerce Park in accordance with a stipulation executed by the parties, which provided that judgment shall enter in the plaintiff's favor in the amount of $744,093.16, including taxable costs, and which included a calculation of postjudgment interest.

On April 24, 2020, the plaintiff filed a motion seeking an order compelling Commerce Park to deliver to the plaintiff (1) all funds held in escrow pursuant to the court's December 11, 2018 order of garnishment and (2) all future payments received by Commerce Park vis-à-vis the account receivable (motion to compel). The plaintiff stated that, per the December 11, 2018 order, either a written agreement by the parties or a court order was necessary to release the escrowed funds. The plaintiff further asserted that Commerce Park did not agree to the release of the funds on the basis of its position that paragraph 28 (b) of the lease restricted the source of the plaintiff's recovery to the leased premises. The plaintiff maintained that Commerce Park's argument predicated on paragraph 28 (b) previously had been rejected by Judge Krumeich and Judge Thim in deciding, respectively, its application for a prejudgment remedy and its motion to modify the prejudgment remedy order. On July 8, 2020, the defendants filed an objection, arguing that paragraph 28 (b) prohibited the plaintiff from recovering the funds and that the court's prior rulings rejecting their reliance on that provision, issued in the context of a prejudgment remedy, did not constitute the law of the case as to the plaintiff's collection efforts. Thereafter, the plaintiff filed a reply brief claiming, inter alia, that the defendants' argument grounded in paragraph 28 (b) was precluded by collateral estoppel or was subject to the law of the case doctrine.

On December 29, 2020, after hearing argument from the parties on September 22, 2020, the court, *Stevens, J.*, issued an order rejecting the plaintiff's contention that collateral estoppel or the law of the case doctrine barred the defendants from invoking paragraph 28 (b) of the lease as a defense to the motion to compel. In addition, the court ordered the parties to file supplemental briefs to delineate further their positions regarding paragraph 28 (b). The parties subsequently filed supplemental briefs in accordance with the court's order. The court heard additional argument on February 22 and March 29, 2021.

On April 8, 2021, the court granted the motion to compel. First, the court concluded that no provision of the lease made the terms of the entire lease applicable to the plaintiff, which was not a party to the lease, and that paragraph 28 (b) did not contain language extending its application to the plaintiff. The court also determined that paragraph 28 (b), as written, applied

only to " 'any breach or default by [Commerce Park] with respect to [Commerce Park's] obligations [under the lease]' . . . ." Alternatively, assuming arguendo that paragraph 28 (b) applied to the plaintiff and its negligence claim against Commerce Park in this matter, the court determined that carrying out that provision would violate public policy because "the evidence fails to establish that the limitations of [paragraph] 28 (b) allow any meaningful or reasonable recovery to compensate the plaintiff for the damages caused by [Commerce Park's] gross negligence." This appeal followed. Additional facts will be set forth as necessary.[5]

The dispositive claim raised by the defendants on appeal is that the court improperly concluded that paragraph 28 (b) of the lease does not apply either to (1) the plaintiff or (2) the plaintiff's negligence claim against Commerce Park. We disagree.[6]

"In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court. . . . Furthermore, when the language of the [lease] is clear and unambiguous, [it] is to be given effect according to its terms. A court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [lease] must emanate from the language used in the [lease] rather than from one party's subjective perception of [its] terms." (Citation omitted; internal quotation marks omitted.) *Cohen* v. *Postal Holdings, LLC*, 199 Conn. App. 312, 323–24, 235 A.3d 674, cert. denied, 335 Conn. 969, 240 A.3d 285 (2020).

Paragraph 28 (b) of the lease provides: "In the event of any breach or default by Landlord with respect to any of Landlord's obligations hereunder, it is agreed and understood that Tenant shall look solely to the estate and property of Landlord in the Demised Premises[7] for the satisfaction of Landlord's remedies,[8] including the collection or a judgment (or other judicial process) requiring the payment of money by Landlord, and no other property or assets of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction thereof. The provisions of this [p]aragraph 28 (b) are not for the benefit of any insurance company or any other third party." (Footnotes added.)

The introductory clause of the lease defines Robbins as the "Tenant," and, moreover, Robbins signed the lease as the "Tenant."[9]

We conclude that the lease, in clear and unambiguous terms, provides that the source of recovery limitation contained in paragraph 28 (b) applies only to the "Landlord," that is, Commerce Park, and to the "Tenant," who is expressly defined in the lease as Robbins. By comparison, other provisions of the lease contain language referring to entities related to Robbins, such as the plaintiff. For instance, paragraph 16 (b), which we discuss in more detail subsequently in this opinion, addresses Commerce Park's liability to the "Tenant, or any person, firm or corporation claiming by, through, or under Tenant . . . ." Another example is paragraph 25 (b) (ii), which, for purposes of a specific provision of the lease unrelated to paragraph 28 (b), expands the definition of "Tenant" to mean "any person, firm or entity controlled by, under common control with, or controlling . . . the Tenant under [the lease] . . . ." Put simply, in light of the lease as a whole, the plaintiff is not subject to the terms of paragraph 28 (b).

In addition, the clear and unambiguous terms of the lease provide that paragraph 28 (b) applies "[i]n the event of any breach or default by Landlord with respect to any of Landlord's obligations *hereunder*"; (emphasis added); that is, under the lease. In the present matter, the plaintiff, a nonparty to the lease, did not assert a claim against Commerce Park predicated on a breach of the lease; rather, it asserted a tort claim sounding in negligence on the basis of Commerce Park's breach of its common-law duty to maintain its property in a reasonably safe condition.[10] Accordingly, we conclude that the plaintiff's negligence claim against Commerce Park is not subject to the source of recovery limitation set forth in paragraph 28 (b).

The defendants rely on paragraphs 16 (b) and 30.3 of the lease, as well as prior rulings by the trial court interpreting those provisions, to support their contention that the plaintiff and its negligence claim against Commerce Park are subject to paragraph 28 (b). The defendants' reliance on these other lease provisions and related court rulings is misplaced.

Paragraph 16 (b) of the lease provides in relevant part: "Tenant . . . covenants and agrees that unless caused by the gross negligence or willfulness of Landlord, or of Landlord's agents, Landlord shall not be responsible or liable to Tenant, or any person, firm or corporation claiming by, through, or under Tenant for, or by reason of, any defect in the Demised Premises . . . ." The defendants highlight that Judge Krumeich, in rendering judgment in the plaintiff's favor on its negligence claim against Commerce Park, determined that the plaintiff had waived Commerce Park's liability for ordinary negligence pursuant to paragraph 16 (b). By its express

terms, however, the negligence waiver set forth in paragraph 16 (b) applies not only to Robbins as the "Tenant," but also to "any person, firm or corporation claiming by, through, or under Tenant . . . ." That language, which is absent from paragraph 28 (b), plainly includes the plaintiff, of which Robbins is the sole shareholder. Thus, paragraph 16 (b) and Judge Krumeich's construction of that provision do not support the defendants' position.

Paragraph 30.3 of the lease provides: "To the extent permitted by applicable law, Landlord and Tenant hereby waive trial by jury in any action proceeding or counterclaim brought by either against the other on any matter whatsoever arising out of or in any way connected with [the lease], the relationship of Landlord and Tenant, or Tenant's use or occupancy of the Demised Premises, or any emergency or other statutory remedy with respect thereto." The defendants note that in 2017, the court, *Radcliffe, J.*, struck a claim for a jury trial filed by the plaintiff on the ground that paragraph 30.3 applied to bar the jury trial claim. Even assuming that paragraph 30.3 applies to both Robbins and the plaintiff, the language of paragraph 30.3 providing that the provision applies to "any matter whatsoever arising out of or in any way connected with [the lease]" is significantly broader than the language of paragraph 28 (b), which applies "[i]n the event of any breach or default by Landlord with respect to any of Landlord's obligations [under the lease] . . . ." The plaintiff's negligence claim, predicated on Commerce Park's common-law duty to maintain its premises in a reasonably safe condition, falls outside of the parameters of paragraph 28 (b). Accordingly, the defendants' argument predicated on paragraph 30.3 and Judge Radcliffe's ruling fails.

In sum, we reject the defendants' contention that paragraph 28 (b) of the lease prohibits the plaintiff from recovering the escrowed funds and payments sought as relief in the motion to compel. Accordingly, we conclude that the court did not err in granting the motion to compel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In 2014, Commerce Park commenced a separate action against Robbins to recover back rent. See *Commerce Park Associates, LLC* v. *Robbins*, Superior Court, judicial district of Fairfield, Docket No. CV-14-4052827-S (rent action). The rent action was consolidated with the underlying action for trial. In 2018, judgment was rendered in part in favor of Commerce Park in the rent action. See *Commerce Park Associates, LLC* v. *Robbins*, supra, 193 Conn. App. 712–13. Subsequently, this court reversed the judgment rendered in the rent action only as to the calculation of damages and remanded the matter for a new hearing limited to a determination of the amount of rent owed by Robbins to Commerce Park. Id., 745. On remand, the trial court, *Krumeich, J.*, rendered judgment in the rent action in accordance with a stipulation executed by Commerce Park and Robbins. That judgment is not at issue in this appeal.

[2] Although Commerce Park and RDR jointly filed their appeal, the claims were raised solely by Commerce Park. *Commerce Park Associates, LLC* v. *Robbins*, supra, 193 Conn. App. 703 n.2.

[3] Paragraph 28 (b) of the lease provides in relevant part: "In the event of any breach or default by Landlord with respect to any of Landlord's obligations hereunder, it is agreed and understood that Tenant shall look solely to the estate and property of Landlord in the Demised Premises for the satisfaction of Landlord's remedies . . . ."

[4] The plaintiff also sought to modify the prejudgment remedy order to allow it to attach a certain account containing funds to secure a judgment rendered in a separate action filed by Commerce Park against Robbins to recover back rent. See footnote 1 of this opinion. The parties subsequently executed a stipulation, which was approved by the court, *Hon. George N. Thim*, judge trial referee, authorizing the plaintiff to attach and/or garnish that account but prohibiting the release of the funds without a written agreement of the parties or a court order.

[5] On February 10, 2022, we issued an order, sua sponte, instructing the parties to be prepared to address at oral argument the issue of "whether this appeal is subject to the jurisdictional time period set forth in General Statutes § 52-278*l* (b). See *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764–67, 628 A.2d 1303 (1993)." Section 52-278*l* (b) sets forth a seven day limitation period with respect to an appeal from an order (1) granting or denying a prejudgment remedy following a hearing under General Statutes § 52-278d, (2) granting or denying a motion to dissolve or modify a prejudgment remedy under General Statutes § 52-278e, or (3) granting or denying a motion to preserve an existing prejudgment remedy under General Statutes § 52-278g. At oral argument, the parties' respective counsel both argued that the jurisdictional time period of § 52-278*l* (b) did not apply to this appeal taken from the court's granting of the plaintiff's postjudgment motion to compel. Upon additional reflection, and particularly in light of the December 11, 2018 order that the funds held in escrow could not be released without a written agreement of the parties or a court order, we agree and conclude that this appeal is not subject to the jurisdictional time period of § 52-278*l* (b).

[6] The defendants also claim on appeal that the court improperly (1) determined that Commerce Park's real property subject to the prejudgment remedy order, including the leased premises, had a de minimis value, (2) made a determination as to the value of Commerce Park's real property without having any proper evidence before it or conducting an evidentiary hearing, and (3) concluded that paragraph 28 (b) of the lease, if applicable, violated public policy under the circumstances of this case. Our conclusion that paragraph 28 (b) does not apply either to the plaintiff or to its negligence claim against Commerce Park is dispositive of this appeal, and, accordingly, we need not address the merits of the defendants' remaining claims.

[7] Pursuant to paragraph 1 of the lease, " 'Demised Premises' " refers to the 20,750 square foot space leased by Robbins from Commerce Park, including the right to use certain rights of way and parking areas in common with Commerce Park's other tenants.

[8] In their principal appellate brief, the defendants represent that the use of the phrase " 'Landlord's remedies' " in this instance, rather than " 'Tenant's remedies,' " is a typographical error. The plaintiff, in its appellate brief, does not address this apparent discrepancy.

[9] The introductory clause of the lease defines Commerce Park as the "Landlord." The parties do not appear to dispute that "Landlord" as used in paragraph 28 (b) means Commerce Park.

[10] Quoting *Atelier Constantin Popescu, LLC* v. *JC Corp.*, 134 Conn. App. 731, 757, 49 A.3d 1003 (2012), in rendering judgment in the plaintiff's favor on its negligence claim against Commerce Park, Judge Krumeich stated that "[t]here is no question that a duty of care may arise out of a contract, but when the claim is brought against a defendant who is not a party to the contract, the duty must arise from something other than mere failure to perform properly under the contract." (Internal quotation marks omitted.) Judge Krumeich determined that Commerce Park violated its obligations to make certain repairs pursuant to the lease *and* its common-law duty. Moreover, in a footnote, Judge Krumeich observed that the plaintiff, as a nonparty to the lease, could not bring an action for breach of the lease or breach of the covenant of good faith and fair dealing.